United States Steel Corporation, Appellant *v.*
Board of Revision of Taxes and Appeals of the City of Clairton, Appellee.
United States Steel Corporation, Appellant *v.*
Board of Property Assessment, Appeals and Review of Allegheny County, Appellee.

Argued October 26, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Edward W. Siefert,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*John Arch,* for appellee, Board of Revision of Taxes and Appeals of the City of Clairton.

*William J. Fahey,* for appellee, Board of Property Assessment, Appeals and Review of Allegheny County.

OPINION BY JUDGE WILKINSON, December 9, 1976:

These appeals arise from an adjudication of the Court of Common Pleas of Allegheny County which sustained in part and reversed in part real estate tax assessments by the Board of Property Assessment, Appeals and Review of Allegheny County and the Board of Revision of Taxes and Appeals of the City of Clairton (hereinafter referred to collectively as the Boards). In 1968, appellees included in their real estate tax assessments of appellant's Clairton facilities a regenerator building at $185,000 and three ammonia tanks at $125,000 each. Following dismissals of the appeals by the Boards, appellant filed an appeal from each dismissal to the Court of Common Pleas of Allegheny County. Because of the similarity of the appeals they were consolidated for hearing both here and below. The lower court sustained the appeals as to the regenerator building, but refused the appeals as to the three ammonia tanks. The Boards did not appeal the decision as to the regenerator building.

The question presented to this Court is whether or not the ammonia tanks in question are to be excluded for purposes of the real estate assessment. The pertinent statutory authority is Section 201 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-201, which provides in part:

The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:

(a) All real estate, to wit: House, house trailers and mobilehomes buildings permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, and all other real estate not exempt by law from taxation. Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as a part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment. . . .

This section has become known as the "Machinery Exclusion." The issue before us is whether or not the three ammonia tanks are within the "Machinery Exclusion," and thus excluded from the assessment.

The leading case authority in this area is *Jones and Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961).[1] In that case the Supreme Court, after a careful review of the prior law, set out the criteria to be used in determining whether or not property is within the "Machinery Exclusion":

Therefore, it is our considered conclusion, under the statute involved, improvements, whether fast or loose, which are used *directly* in manufacturing the products that the establishment is intended to produce and are necessary and integral parts of the manufacturing process and are used *solely* for effectuating that purpose, are excluded from real estate assessment and taxation. On the other hand, improvements which benefit the land

---

[1] The statute construed in *Jones and Laughlin* is substantially similar to the one in the case before us.

generally and which may serve various areas of the land, are not in this category. Neither are structures, which are not necessary and integral parts of the manufacturing process and which are separate and apart therefrom, within the exclusion. A structure used for storage, for example, is part of the realty and subject to real estate taxation. (Emphasis in original.)

*Jones and Laughlin, supra,* 405 Pa. at 431, 175 A.2d at 861.

It is important to note the emphasis placed on the words "directly" and "solely" by the Supreme Court.

In *United States Steel Corp. v. Board of Assessment and Revision of Taxes,* 422 Pa. 463, 223 A.2d 92 (1966), the Supreme Court applied the criteria of *Jones and Laughlin, supra.* While not going through the entire Jones and Laughlin facility piece by piece the Court did discuss several pieces of property individually, one such being the "ore yards." The problem concerning the "ore yards" was that they served as a temporary storage area. The Court stated that:

While these ore yards may be used for *temporary* storage [footnote omitted] such use is minimal and purely incidental to their use as necessary and integral parts of the process of manufacturing steel.

*United States Steel Corp., supra,* 422 Pa. at 470, 223 A.2d at 96.

Thus, the Court held that the "ore yards" were to be excluded from the tax assessment.

In the instant case the storage capabilities of the ammonia tanks are neither incidental nor temporary. On the contrary, the record reveals that the tanks in question are used primarily for the storage of ammonia.[2] The purification and quality control proc-

---

[2] On direct examination, appellant's expert was asked:

"Q. Mr. Haddad, I show you Exhibit No. 2 and ask if you can identify it?

esses are incidental to the primary function of these structures as storage tanks. As such, under the criteria laid down by the Court in *Jones and Laughlin, supra,* and *United States Steel Corp., supra,* the three tanks should be included in the tax assessment and deemed not to be within the "Machinery Exclusion." The tanks are not used "directly" in the manufacture of ammonia, nor are they "necessary and integral parts of the manufacturing process."

In the instant case, Judge HESTER of the Allegheny County Court of Common Pleas, in a very well considered opinion, determined:

It is our considered opinion that the tanks in question are used for both the processing as well as the storage of the ammonia.

There can be no question that the three tanks in question are used in the 'Keystone Project' for the production of ammonia as one of the By-products realized from the conversion of coal into coke. However, there can also be no question that said tanks are further used for the storage of said ammonia following its production. Ergo, the tanks are used directly in manufacturing process, but they are not used solely for effectuating that purpose. They therefore fail to meet the test laid down in the U.S. Steel Corporation vs. Board of Assessment and Revision of Taxes (supra) and cannot be considered as excluded from the assessment.

---

"A. This is a photograph of the three tanks that make up a part of the ammonia refrigeration storage system that we have."

On cross-examination, the same expert testified:

"Q. The real function of the tank is that it holds the ammonia and then the ammonia is extracted and then put through these various lab tests that you described?

"A. That is correct."

If we were to disagree with Judge HESTER, it would be that the tanks here involved are used very incidentally, if at all, in the production and manufacture of ammonia. Their primary, if not exclusive use being storage. The chemical changes effected during the stay in the tanks is for purposes of holding the ammonia and to maintain its purity during storage.

Appellant relies heavily on *Gulf Oil Corp. v. Philadelphia*, 357 Pa. 101, 53 A.2d 250 (1947). This reliance is misplaced. The issue in *Gulf Oil, supra,* was not whether the tanks were an integral part of the refining of oil, but rather whether the chemical and mechanical processes that took place in these tanks could cause the tanks to be classified as machinery. Likewise, appellant's reliance on *Gordon Lubricating Co. v. Allegheny County Board of Property Assessment, Appeals and Review*, 204 Pa. Superior Ct. 441, 205 A. 2d 704, *aff'd per curiam*, 418 Pa. 625, 211 A.2d 284 (1964), is equally misplaced. The Superior Court made it very clear that the tanks involved therein were not for storage, but in fact, something was constantly happening in the tanks so as to make them an integral part of the manufacturing operations. This is simply not the case with the three ammonia tanks involved herein. Therefore, the *Gulf Oil, supra,* and *Gordon Lubricating, supra,* cases are distinguishable.

Accordingly, we will enter the following

ORDER

Now, December 9, 1976, the order of the Court of Common Pleas of Allegheny County, dated July 9, 1975 is affirmed and the appeals dismissed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I am not of the view that this case is distinguishable from *Gulf Oil Corp. v.*

*Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947), and *Gordon Lubricating Co. v. Allegheny County Board of Property Assessment, Appeals and Review,* 204 Pa. Superior Ct. 441, 205 A.2d 704 (1964), *aff'd per curiam,* 418 Pa. 625, 211 A.2d 284 (1965).

In *Gulf Oil Corp. v. Philadelphia, supra,* the Supreme Court held that oil storage tanks, in which physical and chemical processes necessary to the processing of the manufactured product take place, are entitled to exclusion from tax assessment as machinery. The Superior Court concluded that on the record in *Gordon Lubricating Co. v. Allegheny County Board of Property Assessment, Appeals and Review, supra,* certain oil storage tanks were not taxable as real estate.

In the instant case, because ammonia is a gas at standard temperature and pressure, it must be stored in a sealed container, such as a tank. Here the ammonia is refrigerated in the tanks and impurities removed. I can only conclude on this record that the nature of the process is such that specialized holding tanks are absolutely necessary to the processing of the product manufactured. The manufacture of the ammonia gas would be useless unless it could be held until needed. These tanks have a use restricted to a specific industry and are not structures useable for storage generally as would be, for example, ordinary warehouses.

Accordingly, I would sustain the appeal in this case and reverse the order of the Court of Common Pleas of Allegheny County.

Judges KRAMER and BLATT join in this dissent.