Commonwealth of Pennsylvania *v.* Faylor-Middlecreek, Inc., Appellant.

Argued March 7, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Nevin Stetler,* with him *Stetler & Gribbin,* for appellant.

. *Paul S. Roeder,* Deputy Attorney General, for appellee. ·

OPINION BY JUDGE WIKINSON, JR., April 14, 1977:

The facts in the instant case are not in dispute and are established in the stipulations of facts filed. These stipulations are adopted as our findings of fact and are hereinafter related in narrative form.

Appellant is in the business of manufacturing bituminous concrete used in highway construction. Prior to January 23, 1974 appellant maintained two bituminous concrete manufacturing plants at its Winfield, Pennsylvania, location together being capable of manufacturing 600 tons per day. On that date appellant purchased what the invoice identified as two hot-mix storage systems. The stipulations of facts filed state that:

> 10. Immediately upon purchase of the 'hot silos' Appellant affixed the same to the real estate immediately adjacent to its bituminous concrete manufacturing plant in Winfield, Pennsylvania, to which it was attached by conveyor belt.

Prior to the installation of the hot-mix storage systems the bituminous concrete manufactured by appellant at this site was required to be immediately placed in trucks and delivered to its customers. By the in-

stallation of these hot-mix storage systems appellant is permitted to place the bituminous concrete in its then acceptable finished condition in storage for up to 24 hours. In practice it remains only one to two hours before it is picked up by trucks and delivered to construction projects. By a system of hot oil which completely encases the storage facility known as hot silos, the bituminous concrete is maintained at 290 degrees Fahrenheit, its temperature when it leaves the manufacturing plant and is placed on the conveyor belt to the storage facilities. The hot silos are sealed and maintain an oxygen free atmosphere to keep the bituminous concrete from oxydizing and becoming hard.

As a result of the flexibility provided. by these storage facilities, appellant was enabled to dismantle one of the two manufacturing plants and with the remaining one continued to produce 600 tons a day.

At issue in this case is whether the $9,192.00 Sales and Use Tax is due on the purchase of the hot silos. Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7101, et seq. The Department of Revenue Regulation 225(2)(a)(3)(c.9) provides:

(c.9) *Post Production Activities*—Property used to transport or convey the finished pro-. duct from the final manufacturing or processing operation (which includes but does not extend beyond the operation of packaging for the ultimate consumer), and *storage facilities or devices used to store the product are not used directly in manufacturing or processing and are taxable.* For example, equipment which loads packaged products into cases or cartons for ease of handling in delivery is subject to tax. Machinery, equipment, supplies and other property used to convey, transport, handle

or store the packaged products are also taxable. (Emphasis added.)

These Regulations have the force and effect of law. *Charles Riebe Construction Co. v. Commonwealth,* 17 Pa. Commonwealth Ct. 508, 333 A.2d 226 (1975).

The Department of Revenue assessed the tax. The assessment was sustained by the Sales Tax Board of Review. The five member Board of Finance and Revenue sustained the assessment, one member, the Attorney General, dissenting. We must affirm.

Certainly few questions have been more troublesome in the administration of the various tax laws in Pennsylvania than the one presented here whether a particular unit through which a product passes is used in its manufacture. However, it would seem that the instant case presents a far clearer one for the tax to apply than most do. *United States Steel Corporation v. Board of Revision of Taxes and Appeals of the City of Clairton,* 27 Pa. Commonwealth Ct. 422, 366 A.2d 637 (1976); *United States Steel Corporation v. Board of Assessment and Revision of Taxes,* 422 Pa. 463, 223 A.2d 92 (1966); *Jones and Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A.2d 856 (1961); *Gulf Oil Corporation v. Philadelphia,* 357 Pa. 101, 53 A.2d 250 (1947).

Here the product was completely manufactured and was placed in the hot silos for only one reason—the convenience and economy of the appellant. By the use of the hot silos one entire plant was eliminated. The hot silos' design and construction was aimed at preserving the manufactured product in its then condition. The product was withdrawn from the hot silos on the basis of the needs of the customers, but in no event longer than 24 hours. Certainly there is nothing from which we could conclude that the duration of the stay in the hot silos was in any way controlled by an improvement in the condition of the

product. Indeed, the contrary was true for it had to be withdrawn within 24 hours in order for the product to be in acceptable condition.

We, therefore, make the following

CONCLUSIONS OF LAW

1. The "hot silos" purchased by petitioner are storage facilities and are not used directly in manufacturing within the exception of Section 201(o)(4)(B) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(o)(4)(B).

2. The Commonwealth correctly assessed a use tax against Faylor-Middlecreek, Inc. in the amount of $9,192.00, with interest.

ORDER

Now, April 14, 1977, the appeal of Faylor-Middlecreek, Inc. from the decision of the Board of Finance and Revenue in refusing its Petition for Review and sustaining the use tax assessment in question, is hereby denied. The Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth and against Faylor-Middlecreek, Inc. in the amount of $9,192.00, together with interest allowed by law, due and owing, unless exceptions are filed hereto within thirty (30) days.