372 A.2d 815

COMMONWEALTH of Pennsylvania

v.

PHILADELPHIA ELECTRIC COMPANY,
Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 18, 1977.

Decided April 28, 1977.

Roberts R. Appel, T. Roberts Appel, II, Appel, Herr & Appel, Lancaster, for appellant.

Vincent J. Dopko, Deputy Atty. Gen., for appellee.

Gilbert Nurick, McNees, Wallace & Nurick, Harrisburg, for amicus curiae, Cleveland Elec. Illuminating Co.

Albert J. Tomalis, Jr., Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, for amicus curiae, Pennsylvania Power Co.

Harry J. Rubin, Harrisburg, for amicus curiae, Public Service Elec. & Gas Co., Pennsylvania Elec. Co., Metropolitan Edison Co., Jersey Central Power & Light Co.

Before EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The issue presented is whether, under the Public Utility Realty Tax Act (PURTA),[1] the dam, dikes, and canal of the Muddy Run Pump Storage Hydro-Electric Project (Muddy Run Project) constitute taxable utility realty or excluded machinery or equipment. The Commonwealth Court concluded that the dam, dikes, and canal, owned by Philadelphia Electric Company (Philadelphia Electric), were taxable utility realty under PURTA. In our view, the stipulation of the parties establishes that the dam, dikes, and canal are machinery and equipment as previously defined by this Court. We hold, therefore, that

1. Act of March 10, 1970, P.L. 168, as amended, 72 P.S. §§ 3271 et seq. (Supp.1976).

they are excluded from taxation under PURTA, and reverse.

## I

A.   PURTA imposes a tax upon utility realty, payable to the Commonwealth.   In its tax returns for 1970 and 1971, Philadelphia Electric included the value of the dam, dikes, and canal of the Muddy Run Project as utility realty and paid $924,179.00 in taxes on these items. Philadelphia Electric has since concluded that this property is excluded from taxation as machinery and equipment.   It filed a timely petition with the Board of Finance and Revenue for refund of the nearly one million dollars.[2]   The Board of Finance and Revenue denied the petition, and Philadelphia Electric appealed to the Commonwealth Court.   The parties stipulated of record to the relevant facts, and the Commonwealth Court affirmed.   This appeal followed.[3]

B.   The parties, by written stipulation, agreed to all the relevant facts.

The dam, dikes, and canal of the Muddy Run Project are located in southern Lancaster County.   The Muddy Run Project is part of an electric generating system maintained and operated by Philadelphia Electric, a public utility engaged in the manufacture and distribution of electricity.[4]

2.   Pursuant to the State Tax Adjustment Order of the Public Utility Commission, dated March 10, 1970, Philadelphia Electric has been collecting a surcharge from its customers for the PURTA tax.   Hence, it is under a duty to refund to its customers, pro rata, any refund of PURTA taxes it receives.

3.   We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, 17 P.S. § 211.203 (Supp.1976).

4.   Philadelphia Electric also manufactures electricity by steam generators, nuclear power, hydro-electric dams, and diesel turbines all joined in a single electric generating system.   The Philadelphia Electric system is, in turn, connected with other electric generating systems, pursuant to state and federal regulatory policies.

A pump storage hydro-electric project, such as the Muddy Run Project, generates electricity by means of water flowing from a high level reservoir through turbines to a low level water source. The signal characteristic of this type of project is the ability of the electric producing unit, the generator, to be reversed so that, when outside electricity is applied, it acts as a pump. Water released from the high level reservoir drives turbines, which drive the generators, producing electricity. When the process is reversed, electricity is applied to the generators, which then act as motors to drive the turbines in reverse, pumping water back to the high level reservoir. A pump storage project manufactures electricity during peak demand periods on weekdays. During low demand periods, at night and on weekends, water is pumped up to restore the high level reservoir to its proper level.

To operate such a project it is necessary to create a source of water of sufficient volume, at a higher elevation than the turbines, to achieve the necessary water flow by gravity to drive the turbines. The dam, dikes, and canal involved here were built to create such a high level reservoir for the Muddy Run Project. The dam, dikes, and canal do not benefit the land generally, and are of use only in the manufacture of electricity.[5]

Philadelphia Electric acquired land along the banks of a stream known as "Muddy Run," which flows through a ravine into the Susquehanna River. Near the shore of the Susquehanna, Philadelphia Electric built a dam, closing off the ravine. Small dikes were constructed at several points along the rim of the ravine to contain the water at the necessary level. From the reservoir thus created, Philadelphia Electric built a canal to carry the water to the generator units located at a lower level on the bank of the Susquehanna River. The water is channeled

5. The rapid changes in the water level of the storage reservoir prevent its use by the public.

through conduits to the turbine units of the generating equipment and eventually to the Susquehanna River, which serves as the low level water source.

## II

To determine whether the dam, dikes, and canal of the Muddy Run Project are taxable, we look to the definition of utility realty in section 2(c) of PURTA:

" 'Utility realty' means *all lands, buildings, towers, smokestacks and other structures,* located within this commonwealth and owned by a public utility either directly or by or through a subsidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting, of public utility service; *but shall not include* (i) easements or similar interests, (ii) railroad rights-of-way and superstructures thereon, (iii) *machinery, equipment,* pole, transmission tower, pipe, rail or other lines, whether or not attached to such lands, buildings, towers, smokestacks or other structures, and (iv) such realty as is subject to local real estate taxation under any law in effect on April 23, 1968."

72 P.S. § 3272(c) (Supp.1976) (emphasis added). This definition begins with broad, generally inclusive language, followed by certain exclusions. The first part of the definition includes "all lands," certain specific structures—"buildings, towers, smokestacks"—and "other structures" used in the "furnishing" of public utility service. The second part of the definition excludes certain categories of property, including "machinery" and "equipment."

■ Philadelphia Electric contends that the dam, dikes, and canal are excluded from taxation because they are "machinery" and "equipment," even though they may also be "structures." The Commonwealth argues that the two parts of the definition of utility realty are mutually exclusive and that anything which is a "structure"

cannot also fit within the exclusion for "machinery" and "equipment." We cannot agree with the Commonwealth's view of the definition.

The exclusions clearly encompass types of property which would otherwise be taxable under the broad language of the first part of the definition. For example, the first part of the definition includes "all lands," but the second part excludes railroad rights-of-way, and "realty as is subject to local real estate taxation under any law in effect on April 23, 1968." [6] It is also evident that "superstructures," "poles," and "transmission towers," all specifically excluded from the tax, are also "structures." Under the Commonwealth's view the language in the first part of the definition would override specific exclusions in the second part. This would violate the principle of statutory construction requiring that statutes be construed, if possible, to give effect to all provisions. 1 Pa.C.S.A. § 1921(a) (Supp.1976).

■ We conclude that the phrase "other structures" was intended as a general provision, and does not make taxable any property within the categories specifically excluded simply because they may also be "structures." Consequently, we agree with Philadelphia Electric that if the dam, dikes, and canal are determined to be "machinery" or "equipment," they are not taxable under PUR-TA, even though they may also be "structures." [7]

### III

■ In determining whether the dam, dikes, and canal are machinery or equipment, we draw upon our expe-

6. For example, the public utility realty owned by railroads taxable by Philadelphia pursuant to the Act of April 21, 1858, P.L. 385, 53 P.S. § 17032 (1957) and public utility realty of railroads taxable by Pittsburgh pursuant to the Act of January 4, 1859, P. L. 828, are excluded from the definition of public utility realty.

7. This is consistent with the Statutory Construction Act, which directs that provisions imposing taxes are to be strictly construed. 1 Pa.C.S.A. § 1928(b)(3) (Supp.1976).

rience involving taxation of industrial realty under the General County Assessment Law, Act of May 22, 1933, P.L. 853. as amended, 72 P.S. §§ 5020.101 et seq. (1968 and Supp.1976), and the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, as amended, 72 P.S. §§ 5453.101, et seq. (1968 and Supp. 1976) [hereinafter both acts shall be referred to as the "county assessment laws"]. The county assessment laws, like PURTA, define taxable industrial realty and exclude machinery and equipment from taxation.[8] PURTA and the county assessment laws are in pari materia as to the classification of taxable industrial realty, and should therefore be construed in conformity with each other. 1 Pa.C.S.A. § 1932 (Supp.1976). Relying upon our previous decisions interpreting the machinery and equipment exclusion, and the stipulated facts, we hold that the dam, dikes, and canal of the Muddy Run Project constitute machinery and equipment and are therefore excluded from taxation under PURTA.

■ A. PURTA was enacted by the Legislature to implement the tax distribution scheme directed by Article VIII, section 4 of the Pennsylvania Constitution. *American Telephone & Telegraph Co. v. Board of Assessment Appeals and Review*, 461 Pa. 716, 728–29, 337 A.2d

8. Under both the General County Assessment Law and the Fourth to Eighth Class County Assessment Law, taxable realty is defined as follows:
"All real estate, to wit: Houses, house trailers and mobilehomes, buildings permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufacturies of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, and all other real estate not exempt by law from taxation. *Machinery,* tools, appliances and other *equipment* contained in any mill, mine, manufactory or industrial establishment *shall not be considered or included as a part of the real estate* in determining the value of such mill, mine, manufactory or industrial establishment: . . ." (emphasis added)
72 P.S. § 5020.201 (Supp.1976); 72 P.S. § 5453.201 (1968 and Supp.1976).

844, 850 (1975). By its terms, Article VIII, section 4 removes the historical exemption of public utility realty from local real estate taxes. It does not, however, contemplate direct local taxation of utility realty. Rather, it contemplates a plan whereby an amount equivalent to what local taxing authorities could have raised is collected by the Commonwealth and distributed among local taxing authorities in an equitable manner. *American Telephone & Telegraph Co. v. Board of Assessment Appeals and Review*, 461 Pa. at 726, 337 A.2d at 849. Distribution of an amount not less than the gross amount which local taxing authorities could have raised by direct taxation of utility realty, is in lieu of such taxation. *School Districts of Deer Lakes and Allegheny Valley v. Kane*, 463 Pa. 554, 564, 345 A.2d 658, 663 (1975). Thus, although the PURTA tax is imposed and collected by the Commonwealth, it requires a distribution to local taxing authorities of the equivalent of "the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided." Pa.Const. art. VIII, § 4. This amount is described in PURTA as the total "realty tax equivalent." 72 P.S. § 3272(f) (Supp.1976). "Realty tax equivalent" is defined as "the total amount of taxes which a local taxing authority could have imposed on utility realty but for this act." Id. The total "realty tax equivalent" is determined by adding the "realty tax equivalent" from all local taxing authorities, and it is this amount which must be distributed under PURTA. 72 P.S. § 3277 (Supp.1976).

■ Thus, under PURTA, the distribution to local taxing authorities is measured by the aggregate revenues local taxing authorities could have raised if they were permitted to tax the utilities directly. The amount to be distributed is determined from local assessments conducted "in the same manner as is provided by law for the

assessment and valuation of real estate." 72 P.S. § 3275(a) (Supp.1976).

PURTA, as well as the county assessment laws, involves the classification of industrial realty for taxation purposes. The annual distribution called for in PURTA is measured in terms of what local taxing authorities could otherwise have raised by taxing directly the same industrial realty taxed under PURTA. It must be concluded, with regard to the classification of industrial realty, that PURTA is in pari materia with the county assessment laws and the acts should be construed, so far as possible, to be consistent with each other. 1 Pa.C.S.A. § 1932 (Supp.1976). In our view, the Legislature intended, in defining utility realty, to provide an assessment base which conforms to the treatment accorded industrial realty under existing county assessment laws.[9] B. Prior to the enactment of PURTA, this Court had occasion to interpret the scope of the machinery and equipment exclusion of the county assessment laws. *United States Steel Corporation v. Board of Assessment and Revision of Taxes of Bucks County*, 422 Pa. 463, 223 A.2d 92 (1966); *Jones & Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1961); *Gulf Oil Corporation v. Philadelphia*, 357 Pa. 101, 53 A.2d 250 (1947). The Statutory Construction Act creates a presumption, not

9. We cannot agree with the Commonwealth Court that the different definitions of taxable realty in PURTA and the county assessment laws reflect a legislative intent to make property, exempt under the other acts, taxable under PURTA. The definition in PURTA is specifically directed to industrial realty of the type owned by utilities. Thus, it refers to railroad rights-of-way, transmission towers, poles, pipes, and lines—types of property more commonly used in the operation of utilities than other industrial establishments. It also differs from the more general definition in the county assessment laws by not including items such as non-commercial property, which are irrelevant to a tax on utility realty. These differences merely reflect the narrower focus of the PURTA tax. They do not suggest any reason why the common exclusion of machinery and equipment should be interpreted differently in PURTA than in the county assessment laws.

rebutted here, that ". . . when a Court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject intends the same construction to be placed upon such language." 1 Pa.C.S.A. § 1922(4) (Supp.1976). Therefore, in interpreting the machinery or equipment exclusions in PURTA, we look to these decisions construing the same language in earlier statutes on the same subject.

■ Under our case law, the large, fixed, and immovable nature of the property in question is not dispositive. We have long rejected tests such as "physical attachment" or "applies force or involves the quality of motion" as doctrines not adapted "'to the business and improvements of the age.'" *Gulf Oil Corporation v. Philadelphia*, 357 Pa. at 108–09, 53 A.2d at 253, quoting *Voorhis v. Freeman*, 2 Watts & S. 116, 118 (Pa.1841); accord, *Jones & Laughlin Tax Assessment Case*, 405 Pa. at 429, 175 A.2d at 860. Thus, this Court has held that such fixed and immovable items as ore yards, blast furnace stock bins, and slag pits, *United States Steel Corp. v. Board*, supra, and oil refinery tanks, *Gulf Oil Corp. v. Philadephia*, supra, are machinery and equipment and not taxable as realty.

The test for determining what is machinery and equipment, first formulated in *Jones & Laughlin*, 405 Pa. at 431, 175 A.2d at 861, provides:

"[I]mprovements, whether fast or loose, which (1) are used directly in manufacturing the products that the establishment is intended to produce; (2) are necessary and integral parts of the manufacturing process; and (3) are used solely for effectuating that purpose are excluded from real estate assessment and taxation. On the other hand . . . improvements which benefit the land generally and may serve various users of the land are subject to taxation."

*United States Steel Corporation v. Board of Assessment and Revision of Taxes of Bucks County*, 422 Pa. at 467–68, 223 A.2d at 95. Here it is unnecessary to make an independent factual determination whether the dam, dikes, and canal of the Muddy Run Project constitute machinery or equipment excluded from taxation as realty.[10] The statement of facts, stipulated to by the Commonwealth, specifically concedes every element of the *Jones & Laughlin* test. The stipulation, relevant portions of which are set forth in the margin, establishes: (1) Philadelphia Electric is involved in the manufacture of electricity, and the dam, dikes, and canal at the Muddy Run Project serve directly in the manufacture of electricity; (2) the dam, dikes, and canal are necessary and integral parts of the manufacturing process; and (3) the improvements are used solely for effectuating the manufacturing purpose, and are of no benefit to the land generally.[11]

10. Applying the *Jones & Laughlin* test the Court of Common Pleas of Lancaster County concluded that the dam in a hydroelectric plant was exempt from PURTA as machinery and equipment. *Safe Harbor Power Corporation*, 55 Pa.D. & C.2d 591 (1972); cf. *Eastern Pennsylvania Power Co. v. State Board of Taxes and Assessments*, 100 N.J.L. 255, 126 A. 216 (1924) (dam held machinery and equipment taxable under state gross receipts tax rather than realty subject to local realty tax).

11. The stipulated facts state, inter alia, that:
"A necessary and integral part of a pump storage hydro-electric project is the creation of a source of water of sufficient volume at a point higher than the turbines in order to achieve the necessary water flow by gravity to drive the turbines.
. . .
In order to operate a pump storage hydro-electric project, it is necessary to maintain a reservoir of water at an elevation higher than the pump-turbine units. The dams and dikes are a necessary and essential item to maintain the water in the upper level reservoir. . . . The canal is necessary and essential to channel the water, the force that propels the pump-turbine units, to the pump-turbine units. . . . The dam, dikes and canal are designed for and serve as an integral and essential part of the handling of the water for the manufacture of electricity. . . . While, generally, dam, dikes and canals would benefit the riparian lands, in this instance the dam, dikes and canals do not benefit the land generally and are of use only to a manufacturer of electricity."

The stipulated facts conclusively establish that Philadelphia Electric's dam, dikes, and canal at the Muddy Run Project are machinery and equipment. That evidentiary record binds the Commonwealth, and the Court, and is determinative of the controversy here. *Commonwealth v. Carheart*, 450 P. 192, 195–96, 299 A.2d 628, 630 (1973). Therefore, the dam, dikes, and canal of the Muddy Run Project are machinery and equipment excluded from the PURTA tax.

The order is reversed and the matter remanded to the Commonwealth Court for the entry of an appropriate order consistent with this opinion.

JONES, former C. J., and POMEROY, J., did not participate in the consideration or decision of this case.