Gulf Oil Corporation, Appellant *v.* Delaware County Board of Assessment Appeals et al., Appellees.

Gulf Oil Corporation *v.* Delaware County Board of Assessment Appeals et al. Southeast Delco School District, Township of Darby and the Board of Assessment Appeals of Delaware County, Appellants.

Argued December 13, 1984, before Judges Mac-
Phail and Barry, and Senior Judge Kalish, sitting as
a panel of three.

*Henry T. Reath,* with him, *Robert B. Parks, Duane,
Morris & Heckscher,* for appellants/appellees, Gulf
Oil Corporation.

*Peter J. Nolan,* with him, *A. Leo Sereni,* for ap-
pellees/appellants, Board of Assessment Appeals of
Delaware County, Township of Darby, Southeast
Delco School District.

OPINION BY JUDGE BARRY, March 22, 1985:

Appellant, Gulf Oil Corporation (Gulf), owns a ninety-seven acre crude oil tank farm in Darby Township, Delaware County. In 1982, the oil, which was received from ships, was placed in the tanks whose taxability is at issue. The oil contains water which must be removed for the refining process. When the water has been pumped, the oil is heated to control viscosity and agitated to standardize the mix for refining purposes. The oil is then delivered by pipeline under the Schuylkill River to a refinery in Philadelphia where it is processed.

Gulf appealed an initial $310,000.00 assessment of the storage tanks to the Delaware County Board of Assessment Appeals (Board) which dismissed the appeal. Gulf then appealed to the Court of Common Pleas of Delaware County where the issues were the excludability of these oil tanks from taxation, the applicable ratio of assessed value to fair market value, the fair market value of the taxable property and the assessment for the 1982 tax year. It was the trial court's view that the tanks were not subject to tax because of their direct role in the refining process. It concluded that the proper ratio was ten per cent and the fair market value of taxable property was $2,697,-500.00 based on evidence presented by the taxing authorities. The trial court, therefore, assessed the subject taxable property at $269,750.00 for 1982. Before us Gulf appeals the ratio determination and the taxing authorities (Darby Township, Southeast Delco School District and the County of Delaware) and the Board cross-appeal the exclusion of the tanks from taxation.

Gulf alleges error because the trial court admitted a summary of a ratio study and testimony based on the summary which was, it contends, inadmissible hearsay evidence. This summary was produced on a single computer printout sheet. Mr. John Deitch, the Board

Chairman, testified that the study was initiated at his direction (6/28/83, R. p. 101) and carried out by the Data Processing Department of the Board (6/28/83, R. p. 104). He testified that the study was based on 10,546 sales of real estate recorded in the Recorder of Deeds Office in Delaware County from July 1, 1980 to June 30, 1981 (6/28/83, R. p. 101), of which 3,701 sales were eliminated because they comprised sales that were not arm's length transactions (6/28/83, R. p. 106). Mr. Deitch further stated that this information was placed into the computers by employees of the Board (6/28/83, R. p. 106) ; he was, however, unable to verify the technique by which the employees eliminated certain sales nor could he vouch for the underlying data used to compute the summary (6/28/83, R. pp. 108-114). Mr. Deitch apparently did not personally analyze the sales (6/28/83, R. pp. 108-114) and was unable to produce the data which supported the conclusions of the summary (6/28/83, R. pp. 109-111). In our view, the trial court erred by admitting the summary and allowing Mr. Deitch to testify on this subject.

We held in *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), *dismissed in* 500 Pa. 341, 456 A.2d 986 (1983), that the trial court properly excluded from evidence the results of computer studies which allegedly demonstrated a lower assessment to market value ratio because the taxpayers' witnesses were not personally familiar with the data used and could not guarantee the accuracy of the information filed or trustworthiness of the individuals responsible for placing the data into the computers. The situation is similar here. Mr. Deitch had no personal knowledge concerning the compilation of the data, did not participate in programming the information for the computers, and did not vouch for the employees who gathered the data or who

fed it into the computers. We conclude, therefore, that the trial court erred by admitting this hearsay evidence.

We, moreover, note that the elimination of such a large number (over 35%) of the actual real estate sales transactions in the Board's ratio study deprived it of significant evidential value. *Chartiers Valley.* Although evidence of every recent sale need not be produced by a taxpayer in a taxing district, *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965), he must produce a sufficient number of sales to substantiate his contention. Appellees have failed to provide such information.

For these and other reasons we, furthermore, reject the contention of the appellees that the ratio study qualified as a hearsay exception because it was prepared in the ordinary course of business. The ratio study may indeed have been compiled by the Board for use in normal governmental functions, *Chartiers Valley;* however, it does not necessarily follow that the study qualifies as a business record exception to the hearsay rule. Section 2 of the Uniform Business Records Act (Act), 42 Pa. C. S. §6108(b) provides:

(b) General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testified to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

We believe that Mr. Deitch did not qualify as a witness able to testify concerning the preparation and maintenance of the ratio study so as to justify a presumption of trustworthiness in the study. *In re Indyk's*

*Estate,* 488 Pa. 567, 413 A.2d 371 (1979). Because Mr. Deitch did not possess adequate knowledge of the ratio study, we conclude that it lacked credibility and legal sufficiency, *Chartiers Valley;* the case, therefore, should be remanded on this issue.

Appellees cross-appeal the trial court's decision which excluded the oil tanks from taxation. They argue that the fair market value of the tanks should be included in the assessment because the assessment applied only to those tanks located in Darby Township and not to those located at the Philadelphia refinery and because the tanks were used for storage and not for direct use in the manufacturing process.

The trial court determined that the tanks were used in the refining process to heat the oil, remove water from the crude and agitate the oil to effect a standard mix. It concluded that the tanks where an integral and direct part of the refining process and therefore not taxable. We agree.

Under Section 201 of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-201, machinery or equipment used as part of the manufactory process are not included as real estate for tax assessment purposes. A number of cases are instructive on this proposition. The Supreme Court held in *Gulf Oil Corporation v. Philadelphia,* 357 Pa. 101, 53 A.2d 250, that oil storage tanks in which physical and chemical processes necessary to the processing of the manufactured product take place are excluded from tax assessment as machinery. In *United States Steel Corporation v. Board of Assessment and Revision of Taxes,* 422 Pa. 463, 223 A.2d 92 (1966), the Supreme Court reviewed the real estate tax assessments of a steel mill and concluded that although ore yard facilities were used incidentally or temporarily for storage, they were necessary and integral parts of the steel manufacturing process and

thus not subject to taxation. It determined that the ore yards did not fall within the ambit of *Jones and Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A.2d 856 (1961), which stated that "[a] structure used for storage, for example, is part of the realty and subject to the real estate taxation." 405 Pa. at 431, 175 A.2d at 861.

In *Gordon Lubricating Company v. Allegheny County Board of Property Assessment, Appeals and Review*, 204 Pa. Superior Ct. 441, 205 A.2d 704 (1964), *aff'd per curiam* 418 Pa. 625, 211 A.2d 284 (1965), a case which interpreted Section 201 of the Law, the Superior Court reviewed the assessment of oil tanks and determined that oil tanks generally are not merely storage facilities but rather are an integral part of the manufacturing process, indispensable to the operation of the company's business, and, therefore excluded from real estate assessment and taxation. It concluded that the *Jones and Laughlin* pronouncement regarding the exclusion of storage tanks from taxation did not apply to the tanks of *Gordon*.

Our Court has also interpreted Section 201 of the Law in *United States Steel v. Board of Revision of Tax and Appeals*, 27 Pa. Commonwealth Ct. 422, 366 A.2d 637 (1976), where we examined the assessment of ammonia tanks and determined that the storage capabilities of the ammonia tanks were neither incidental or temporary but rather were primarily for storage of ammonia. Under the criteria set forth in *Jones and Laughlin* and *United States Steel Corporation*, we concluded that the ammonia tanks were not used *directly* in manufacturing ammonia nor were they *necessary* and *integral* parts of the manufacturing process.

In the present case, the trial court accepted the testimony of Gulf's expert, Mr. Joseph Patella, who testified regarding the use of the oil tanks (2/8/83, R.

pp. 44-78). Clearly, the tanks are not storage facilities but rather are used to disengage water from the crude oil, heat the oil to retain a liquified rather than solidified state and homogenize the various crude oils to create a stable mixture. These steps, a three to five day process, are essential to refining the crude oil. We, therefore, concur with the trial court's conclusion that the oil tanks are an integral and direct part of the refining process and thus are excluded from assessment and taxation.

Accordingly, we remand this case on the ratio issue and affirm the trial court order regarding the exclusion of the oil tanks.

### ORDER

Now, March 22, 1985, the order of the Court of Common Pleas of Delaware County, entered June 30, 1983, at No. 81-19355, is vacated and the case remanded for further consideration of the issue of the ratio of assessed value to fair market value. That portion of the order regarding the excludability of the oil tanks is affirmed.

Jurisdiction relinquished.

Judge WILLIAMS, JR., did not participate in the decision in this case.

CONCURRING AND DISSENTING OPINION BY SENIOR JUDGE KALISH:

I agree with the opinion excluding tanks from taxation as part of the real estate. It is my opinion that the trial judge applied the correct methodology in calculating the taxing district's "common level" ratio of assessments and committed no error of law or abuse of discretion in admitting the evidence of the studies and the testimony of Mr. Deitch, Chairman of the Board of Delaware County Assessment Appeals.

An owner of property is entitled to have his assessment reduced to conform to the common level assessment in the taxing district. The average of the varying ratios may be considered the common level. Because of the uniformity requirement of our Constitution in Pennsylvania all real estate is entitled to the same ratio, *i.e.*, you cannot apply one ratio to residential property and another to commercial or industrial property. All are entitled to uniform treatment. *Keebler v. Kenny*, 496 Pa. 140, 436 A.2d 583 (1981); *McKnight Shopping Center, Inc. v. Allegheny County Board of Property Assessments*, 417 Pa. 234, 209 A.2d 389 (1965). Our courts have recognized sales data as a means of constructing the common level. *Keebler.*

John Deitch, Chairman of the Board of Delaware County Assessment Appeals, testified as to the methodology used in this case in arriving at the common level. He testified that under his supervision a printout was made of 10,546 sales from July 1, 1980 to June 30, 1981. From this raw sales data were eliminated 3,701 sales as not being of arm's length, *i.e.*, one dollar sales, family sales, et cetera. He said this was done by employees but he could not verify the technique used, nor vouch for its accuracy. He then said that the ratios were calculated by breaking down the sales into categories of use, such as residential, industrial and commercial, et cetera. He then computed the unweighted ratios for the properties in each use category. Then he estimated the total fair market value of every parcel in each use type. Finally, he calculated a district-wide *weighted* ratio by summing the total estimated fair market value for each parcel in the district and divided by the total assessed value. This stratification and weighted ratio methodology was approved in the *Keebler* case. The testimony of Mr. Deitch shows familiarity with this methodology acceptable to the Supreme Court and his testimony was relevant and

helpful to the trial judge whose duty it is to see to it that the average ratio as calculated is not grossly deceptive as a fair gauge of the ratio of assessment to fair market value. Thus, his testimony assured the trial court that the inference drawn from the data was not unreasonably affected by transactions not of arm's length or by underpresented or overpresented uses.

The taxpayer does not challenge this methodology employed by Mr. Deitch but attacks his testimony because he was not personally familiar with the sales data nor vouched for the employees who gathered the material for the computer, and that the admission of this material was in error because it was hearsay.

In the *Chartiers Valley* case, unlike the present case, the witness not only had no personal knowledge of the studies used, but also was unacquainted with the meaning of the studies' terminology. The studies used were not prepared for ratio purposes but primarily to evaluate and prepare various computer programs. Under the circumstances, the trial judge was correct in giving no credibility to the witnesses. The studies did not have any real relevant or probative value.

In the instant case, however, the Chairman of the Board supervised the print out of 10,546 sales of which 3,701 sales were excluded. He then discussed in detail and thus showed real familiarity with the methodology used to determine the ratio. He showed familiarity with weighted as contrasted to unweighted ratios. He testified that the system used was affirmed by the Supreme Court.

As Chairman of the Board of Assessment Appeals, his testimony as to methodology employed is certainly relative and probative of the issue involved. His opinion of the ratio found by the Board was based on the data of sales used by the Board and taken from the Recorder of Deeds Office. The contention that the

technique used is inappropriate goes to the weight that the fact finder is to give to the testimony and not its admissibility. The fact finder may consider the fact that a large number of sales were eliminated in the study. But here again this goes to the weight of the testimony rather than its admissibility. It is not necessary that the Chairman have personal knowledge of the data or vouch for the employees. The trial court's decision to accept as credible the testimony of Mr. Deitch must prevail since it is supported by the evidence. Mr. Deitch used the data in evidence and applied to it the techniques approved in the *Keebler* case.