Marriott Corporation and Equitable Life Assurance Society of the United States, Appellants *v.* Board of Assessment Appeals of Montgomery County, Appellee.

Bucks County Board of Assessment Appeals, Appellant *v.* Street Road Associates, Appellee.

Argued November 18, 1981, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

Argued November 19, 1981, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Jeremiah J. Cardamone,* with him *Curtis Wright, Timoney, Knox, Hasson & Weand,* for appellants, Marriott Corporation and Equitable Life Assurance Society of The United States.

*Harris F. Goldich,* with him *Cassin W. Craig* and *Charles Potash, Wisler, Pearlstine, Talone, Craig & Garrity,* and *Parker H. Wilson,* for appellees, Board of Assessment Appeals of Montgomery County.

*Martin J. King,* for appellant, Bucks County Board of Assessment Appeals.

*Ronald J. Smolow,* for appellee, Street Road Associates.

OPINION BY JUDGE CRAIG, January 6, 1982:

These two appeals, although not consolidated, involve the same principal question of law—the effect to be given Section 9 of The General Assessment Law (Law),[1] 72 P.S. §5350.

At No. 650 C.D. 1981, the Bucks County Board of Assessment Appeals (Bucks County Board) appeals from an order in mandamus issued by the Common Pleas Court of Bucks County directing that board to grant Street Road Associates (Associates), a limited partnership owning real estate located at 1950 Street

---

[1] Section 9 of The General County Assessment Law, Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5350(c). The effective date of the amendment was December 4, 1978.

Road, Cornwells Heights, a hearing on the value assessed to its property for 1979 real estate tax purposes.[2]

At No. 1429 C.D. 1980, Marriott Corporation (Marriott), the lessee of real property located on City Line Avenue, Montgomery County, appeals from an order of the Common Pleas Court of Montgomery County denying Marriott's petition for the allowance of real estate tax assessment appeals for the tax years 1978 and 1979 in consolidation with appeals filed for the tax years 1977 and 1980.

The Bucks County Board, in July, 1977, had assessed Associates' property for 1978 real estate tax purposes at $182,000. In 1976, the Montgomery County Board of Assessment Appeals (Montgomery County Board) had assessed Marriott's property for 1977 real estate tax purposes at $4,543,000.

On appeal, the respective boards reduced the assessed values of the properties. However, both Associates and Marriott remained dissatisfied and further appealed the assessments to the common pleas courts of the respective counties in which the properties are located.

---

[2] Because the trial court's order in Associates' mandamus action "remanded" the matter to the Bucks County Board for the purpose of holding hearings and making a final determination of the assessment for the 1979 year, Associates contend that Bucks County Board's appeal to this Court should be dismissed as interlocutory. We cannot agree. The use of the term "remand" in the trial court's order was inappropriate because the mandamus action was not an *appeal* from a determination of the Bucks County Board. The mandamus action and the 1979 assessment issue are distinct proceedings. By ordering the board to hold a hearing, the trial court entered a final order in the mandamus action. Because the ultimate decision to grant the mandamus is what is being contested here, this appeal is properly before us. *Strand v. Glasgow, Inc.,* 4 Pa. Commonwealth Ct. 148, 286 A.2d 694 (1972).

On October 30, 1978, Associates, the Bucks County Board and Bensalem Township entered into a stipulation that the assessed value of Associates' property for 1978 should be $140,000; that settlement was not reduced to an order until July 9, 1979. In July, 1978, the Bucks County Board had assessed Associates' property for 1979 tax purposes at $167,000; although the Bucks County Board thereafter repeatedly denied Associates' requests that it change the 1979 assessment to $140,000, Associates never formally appealed the 1979 assessment.

After the entry of Marriott's 1977 assessment appeal—which is still pending—the Montgomery County Board assessed Marriott's property for the 1978, 1979 and 1980 tax years. Marriott timely appealed the assessment for the 1980 tax year, but did not file a formal appeal of the assessments for the 1978 and 1979 tax years.

The appeal deadline for Marriott to appeal the assessment for 1978 taxes was September 1, 1977; both Marriott and Associates had a September 1, 1978 deadline for appealing the 1979 assessment. Therefore both of those deadlines passed before the December 4, 1978 effective date of the legislature's amendment to Section 9 of the Law, which in pertinent part reads as follows:

(c) If a taxpayer has filed an appeal from an assessment, *so long as the appeal is pending* before the board or before a court on appeal from the determination of the board, as provided by statute, *the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuatin for any assessment subsequent* to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court. The board shall

hold its hearings and make its final determination of the subsequent years in question in the same manner as for the year or years for which the original appeal was filed.[3] This provision shall be applicable to all pending appeals as well as future appeals. (Emphasis added.)

This amendment to Section 9 precipitated both Associates' mandamus complaint to require that the Bucks County Board change the 1979 assessment to $140,000, the figure the parties had settled on as the proper value for the 1978 assessment, and Marriott's petition to consolidate assessment appeals from 1978 and 1979, along with the 1980 appeal, for trial with the pending 1977 assessment appeal.

As to those added appeals, both boards contend that the amended section does not grant Associates and Marriott automatic appeals of those assessments which were time-barred before the amendment became effective. Specifically, the boards argue that the concluding words, ''[t]his provision shall be applicable to all pending appeals as well as future appeals,'' indicate that the amendment spawns automatic appeals only as to assessments made after the amendment or, at most, only as to assessments which remained appealable at the time the law was amended.

We cannot agree with such an interpretation of the statutory language. The operative words inform us that, so long as ''an appeal'' is pending before a board or a court, ''the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for *any assessment subsequent to the filing of such appeal* with the board and prior to the

---

[3] The one sentence immediately preceding this footnote number does not appear in Purdon's Pocket Parts. However, as noted by the trial court, a reading of the pamphlet laws reveals the existence of the sentence.

determination of the appeal by the board or the court.''
(Emphasis added.)  Thus the amendment embraces
any and hence *all* assessments made after the filing
of the ''pending appeals,''[4] not just those which ex-
isted or remained appealable at the time of the amend-
ment.  Hence Marriott's pending appeal for 1977 and
Associates' appeal for 1978—not judicially closed un-
til 1979—must be ''taken as'' appeals for the subse-
quent 1978 and 1979 assessments also.

Because we hold that the amended section grants
automatic appeals of tax assessments even though ap-
peals from them were otherwise time-barred before its
effective date, we must also consider the Montgomery
County Board's contention that the amendment is un-
constitutional because, by reviving appeal rights, it
deprives municipalities of ''vested'' rights and un-
dermines the legislature's constitutional duty to pro-
vide for the maintenance and support of a thorough
and efficient system of public education.

As a creature of the state, a municipal corporation
(absent home rule) has only those powers granted to
it by the General Assembly.  *Appeal of the Borough
of Ambridge,* 53 Pa. Commonwealth Ct. 251, 417 A.2d
291 (1980).  Here the General Assembly, the sole
repository of the power to tax in all forms, delegated
to the municipality the right to levy real estate taxes.
However, that delegation does not diminish the legis-
lature's authority over the area.  Indeed, the legis-
lature could conceivably revoke the municipalities'
right to levy the taxes.  *See Mastrangelo c. Buckley,*

---

[4] In both the concluding sentence of the subsection and the
operative sentence beginning it, the concept of a pending appeal is,
as might be expected, exactly the same—an appeal actually filed
and therefore pending, made the base to which an automatic appeal
is attached with respect to "any assessment subsequent" to the
original appeal filing.

433 Pa. 352, 364, 250 A.2d 447, 453 (1969), where the state Supreme Court stated:

As a necessary corollary to the exclusive competency of the General Assembly to authorize the imposition of taxes by a municipality, the General Assembly possesses the sole competency to determine not only the areas of permissible taxation but also *when* and *in what manner* such taxes shall be imposed. If, for instance, the General Assembly alone has the power to authorize the taxation of real estate by municipalities, it stands to reason that the General Assembly alone has the power to determine the frequency with which the power of taxation may be exercised. (Emphasis in original.)

Furthermore, we fail to see how the amended section, even if it complicates local revenue-raising, can be said to undermine the General Assembly's duty with regard to public schools.

If the vested rights claim be regarded as a constitutional one, it is barred because a municipal corporation cannot invoke constitutional protections against its sovereign, the state. *See Philadelphia Facilities Management Corp. v. Biester,* 60 Pa. Commonwealth Ct. 316, 431 A.2d 1123 (1981).

Finally, we cannot agree with Associates' position that the board is under a legal duty automatically to assess the property at $140,000 for 1979 real estate taxes. The proper action, as ordered by the Bucks County court and required by the statute, is for the board to hold hearings and make its final determination of the subsequent years in the same manner as for the original appeal.

Accordingly, we reverse in part the decision of the Common Pleas Court of Montgomery County and af-

firm the decision of the Common Pleas Court of Bucks County.

### ORDER IN 1429 C.D. 1980

Now, January 6, 1982, the order of the Common Pleas Court of Montgomery County at No. 76-18918 is reversed insofar as it denies allowance of the appeals on tax assessments for the years 1978 and 1979, and consolidation of the same with the appeals for the 1977 and 1980 assessments.

### ORDER IN 650 C.D. 1981

Now, January 6, 1982, the order of the Common Pleas Court of Bucks County, at No. 80-2885-11-5, dated February 27, 1981, is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.