Strawbridge & Clothier, Inc., and Equitable Life Assurance Society of the United States, Appellants *v.* Board of Assessment Appeal of Delaware County, Pennsylvania, et al., Appellees.

Argued February 1, 1985, before Judges Doyle and Palladino, and Senior Judge Barbieri, sitting as a panel of three.

*Carl N. Martin II*, with him, *Robert Scandone*, for appellants.

*D. Barry Gibbons, Gibbons, Buckley, Smith, Palmer & Proud, P.C.*, with him, *A. Leo Sereni* and *Harry J. Bradley*, for appellees.

OPINION BY JUDGE DOYLE, May 8, 1985:

This is a tax assessment case in which Strawbridge & Clothier, Inc. and the Equitable Life Assurance Society of the United States (Appellants) appeal from the order of the Delaware County Court of Common Pleas which assessed Appellants' property at $865,000.00 for the 1983 tax year.[1]

Appellants are the owners of commercial property located in Springfield Township, Delaware County. Appellants appealed to the Board of Assessment Appeals of Delaware County (Board) from a 1983 tax assessment against their property in the amount of $880,000.00. On November 5, 1982, the Board affirmed this assessment, and an appeal was taken to the court of common pleas. While this appeal was pending, Appellants' property was again assessed for $880,000.00 for the 1984 tax year. When the trial was held on October 19 and 20, 1983, Appellants sought to include in their appeal the 1984 tax year assessment, as well as that from 1983.

---

[1] This appeal was consolidated for argument with the cross-appeal of Appellee Springfield School District, docketed at 3666 C.D. 1983. Said cross-appeal was discontinued at the time of oral argument.

After considering the evidence, the trial court made an initial determination that only the 1983 assessment was at issue, since the Board had not yet rendered a decision on the 1984 assessment. As to the 1983 tax year, the court determined that the fair market value of the property was $8,650,000.00. Concluding that the common level ratio of assessed value to fair market value in Delaware County was ten percent, the Court set the assessed value of the property at $865,000.00.

Before this Court Appellants raise two issues: 1) Whether the trial court erred in establishing the common level ratio of assessed value to fair market value at ten percent, and 2) Whether the trial court erred in refusing to consider the 1984 tax year assessment.[2]

### I. COMMON LEVEL RATIO

The concept of a common level ratio was set forth by the Pennsylvania Supreme Court in *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965). *Deitch* held that under the tax uniformity provisions of the State Constitution, no taxpayer should be required to pay more than his fair share of taxes, and that any excessive assessment must be reduced to the "common level" of assessments in the taxing districts. Thus, in situations where a ratio is used to determine assessed value from fair market value, *Deitch* required that a "common level" ratio be determined as follows:

Where the evidence shows that the assessors have applied a fixed ratio of assessed to market value throughout the taxing district,

[2] Our scope of review in a tax assessment appeal is limited; the findings of the court below must be given great force and will not be disturbed unless clear error appears or there is an abuse of discretion or lack of supporting evidence. *Appeal of Chartiers Valley School District*, 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982), *appeal dismissed*, 500 Pa. 341, 456 A.2d 986 (1983).

then that ratio would constitute the common level. However, where the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios may be considered the "common level."

417 Pa. at 220, 209 A.2d at 401.

The order of proof in establishing a common level ratio is well settled. Once the assessment record has been admitted into evidence, a prima facie case for the validity of the assessment has been established, and the taxpayer has the burden of coming forward with competent, relevant evidence to rebut the validity of the assessment. Once the taxpayer has met this burden, however, the taxing authority may no longer rely on the assessment record, and must then come forward with evidence of its own to rebut the taxpayer's evidence. *Deitch* at 221-22, 209 A.2d at 402. "Where the taxpayer's testimony is relevant, credible and unrebutted, it must be given due weight and cannot be ignored by the court. It must necessarily be accepted." *Id.* at 222, 209 A.2d at 402; *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 242, 209 A.2d 389, 393 (1965).[3]

---

[3] Assessment appeals in counties of the Second Class A and Third Class are governed by the Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §§5342-5350k.

This Act was substantially amended by the Act of December 13, 1982, P.L. 1182 (1982 Amendment), under which the common level ratio is to be determined by the State Tax Equalization Board, and applied only when it deviates by more than fifteen percent from the county's "Established Predetermined Ratio." *See* Sections 8(d.2) and 9(a.1) of the Act, 72 P.S. §§5349(d.2), 5350(a.1); and Section 1.1 of the Act, added by the 1982 Amendment, 72 P.S. §5342.1.

The 1982 Amendment does not apply to the present appeal which was taken before the Amendment became applicable. The Amendment applied to all appeals initiated after January 1, 1983. *See* Section 7 of the 1982 Amendment.

In the present case the parties stipulated to the use of all relevant testimony concerning the common level ratio which had been given in a concurrent case, *British Petroleum Oil Co. v. Delaware County Board of Assessment Appeals* (Delaware Co., Nos. 82-16548, 82-16549). In that case, the taxpayers presented Dr. Andrew G. Venzilli, a qualified expert in economics with technical expertise in statistics, who testified concerning a study he made to determine the common level ratio. Using an approach approved by the Pennsylvania Supreme Court in *Keebler Co. v. Board of Revision of Taxes*, 496 Pa. 140, 436 A.2d 583 (1981), Dr. Venzilli analyzed all "arm's length" real estate transactions which occurred within nine months preceding the assessment date, and derived a common level ratio of 8.63 percent. Dr. Venzilli testified that the margin of error in his study was less than one-tenth of one percent and that no allowance for error could justify a deviation of as much as fifteen percent, as would occur if the Board's ratio of ten percent were used. In response to this testimony the Board offered the testimony of its chairman, John R. Dietch. Although Dietch was not qualified as an expert, he was permitted to testify to the result of a study undertaken by the Board to determine the common level ratio. Much like the study made by Dr. Venzilli, the Board's study followed the *Keebler* approach and used representative real estate transactions to arrive at a "mathematical" figure of 8.6 percent. Dietch testified, however, that the Board made a determination that the study's finding should be adjusted upward to ten percent because of prevailing marketing conditions. According to Dietch, the Board's position was that a "buyer's market" had forced many sellers into assuming buyers' finance charges by the payment of "points", thereby making the actual consideration given by the buyer less than

the stated sale price. It is urged that this, in turn, caused the common level ratio to be higher than the study's figures would suggest. Dietch offered no evidence to substantiate the existence of a "buyer's market" or its effect on the stated sale price of real estate. Moreover, he could not justify, by reference to statistical analysis or otherwise, the use of the ten percent figure as reflecting an appropriate upward adjustment in the ratio amount. Indeed, the evidence indicates that there was no statistical basis for this upward adjustment, and that the ten percent was arrived at in a purely subjective manner, as the following colloquy between Dietch and taxpayer's attorney seems to suggest:

Q. I'm asking, you have prepared the study and you are testifying in court, isn't there just as much relevance that you spoke about a mortgage, the weak real estate market, to choose nine percent?

A. No, I think I would have gone higher than that.

Q. What range would you pick?

A. I don't. I think there's a range and I think you stay somewhere within the range.

Q. You made no incident statistical analysis for a range, did you?

A. No, because it's purely subjective.

We must conclude, therefore, that there was no evidence presented to support the Board's common level ratio of ten percent. The Board's witness was not qualified as an expert, and could not offer an opinion as to the propriety of altering the Board's study. *See Gulf Oil Corp. v. Delaware County Board of Assessment Appeals,* 88 Pa. Commonwealth Ct. 341, 489 A.2d 321 (1985). Even had the witness been an expert, there was simply no record evidence upon

which such an opinion could have been based. Because the Board failed to rebut taxpayer's testimony by competent evidence of its own, the taxpayer's expert testimony must be given due weight, and should have been accepted by the court. *Deitch; McKnight.*

The Board argues that it successfully rebutted taxpayer's testimony by establishing that the ten percent ratio was actually applied by the Board to calculate the assessed value for all real estate in 1983. Although the Board's testimony may have *asserted* that a ten percent ratio was applied, there was clearly no evidence which could have *established* this to be a fact. Indeed, to the extent that the Board's evidence consisted of its own study, it would tend to *corroborate* the taxpayer's evidence that the ten percent ratio was *not* applied.[4]

The Board also suggests that its use of prevailing market conditions to arrive at the common level ratio is not prohibited by the holding in *Keebler.* While this may be true, it is not the Board's deviation from the approach in *Keebler* that is the precise issue, but rather its lack of proof, which determines our outcome in this matter. The Board asserted that, due to market conditions, the fair market values of the representative properties were less than their sale prices. The Board could have proven this fact by expert testimony or by other statistical evidence, and then have incorporated the results in its study to arrive at the appropriate common level ratio. Since it did not, there was no basis upon which the court could accept the Board's figure of ten percent. And, as *Deitch* instructs, the trial court independently, "must

---

[4] The Board's use of a uniform figure does not permit the court to treat the figure as an "Established Predetermined Ratio" in the manner set forth by the 1982 Amendment to the Act. *See supra,* note 3. As indicated earlier, the 1982 Amendment has no applicability to the present appeal.

determine the appropriate ratio of assessed value to market value which *exists* in [that county]." *Id.* at 224, 209 A.2d at 403 (Emphasis added.)

For these reasons we must vacate the court's findings of fact Nos. 2 and 3 made in its final order, and direct that it make new findings on the basis of the expert testimony offered by Appellants.

## II. 1984 TAX YEAR ASSESSMENT

Appellants contend that the trial court erred in refusing to consider an appeal from the 1984 tax year assessment. Although Appellants never formally appealed the 1984 assessment to the Board or to the court, they argue that this assessment was deemed appealed pursuant to Section 9(c) of the Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5350(c), which states, in pertinent part:

If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.[5]

Appellants argue that under this section the court was required to consider Appellants' appeal from the Board's determination on the 1983 tax assessment as an appeal from the 1984 assessment as well. The trial court refused to do so, however, because a determination on the 1984 assessment had not yet been rendered by the Board. In reaching its decision the trial court distinguished the case of *Marriott Corp. v. Board of*

[5] Subsection (c) was added by Section 3 of the Act of October 5, 1978, P.L. 1143.

*Assessment Appeals,* 63 Pa. Commonwealth Ct. 622, 438 A.2d 1032 (1982), concluding that in *Marriott* our Court allowed automatic appeal of subsequent tax year assessments under Section 9(c) *only* in cases where a final determination for those tax years *had been made* by the Board. We do not believe that this constitutes a correct analysis of the facts in *Marriott.*

*Marriott* involved two separate appeals. In each appeal, appellant-taxpayer sought to have the assessment for subsequent tax years considered with its existing assessment appeal. In each appeal, the board of assessment had *not* rendered a decision on the subsequent tax year assessments. In the first appeal, we affirmed the trial court's order in an action in mandamus, requiring the board to hold hearings on the subsequent appeals. In the second appeal, however, we reversed the trial court's order denying appellant's petition to consider appeals from subsequent tax year assessments[6] with its assessment appeal *currently before that court. Id.* at 629, 438 A.2d 1035.

It is clear, therefore, that *Marriott* allows the taxpayer the alternative of either pursuing its subsequent tax assessment appeals before the board, or, should the taxpayer's initial appeal be currently before the trial court, of pursuing its subsequent appeals directly before that court. This result is indeed consistent with the terms of Section 9(c) of the Act which requires that an initial assessment appeal "shall be taken" as an appeal from subsequent assessments whether that initial appeal is pending before the Board, *or* whether it is pending "before a court on appeal."

In addition, we note that any possible ambiguity in the Act concerning the necessity of a prior determi-

---

[6] The petitioner in the second appeal, *Marriott Corporation,* requested that the assessments from three subsequent tax years be considered, although only one assessment, that from the 1980 tax year, had ever been formally appealed.

nation by the Board was resolved by the legislature in 1979, when it deleted a sentence in Section 9(c) of the Act which stated:

> The board shall hold its hearings and make its final determination of the subsequent years in question in the same manner as for the year or years for which the original appeal was filed.[7]

The deletion of statutory language by the legislature renders the language inoperative and indicates that the legislature has admitted a different intent. *Deremer v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 415, 433 A.2d 926 (1981). In the present case, the deletion of language requiring a hearing by the Board suggests that the legislature did not intend a determination by the Board to be necessary in order to pursue an appeal for subsequent tax year assessments. Thus, this legislative action provides additional support for the holding in *Marriott,* which had been decided under the Act prior to this deletion.

For these reasons, we conclude that the trial court erred when it refused to consider the evidence relating to the 1984 tax assessment appeal. Thus, we must remand to the trial court for additional findings on the issue of the 1984 tax assessment.

## ORDER

Now, May 8, 1985 the order of the Court of Common Pleas of Delaware County, No. 82-16873, dated November 7, 1983, is hereby vacated in part. The matter is remanded to said court for new findings on the issues of ratio and assessment for the 1983 tax year, and for additional findings on all issues relating to the 1984 tax years.

Jurisdiction relinquished.

---

[7] The language was deleted by Section 1 of the Act of July 13, 1979, P.L. 114.

Judge WILLIAMS, JR., did not participate in the decision in this case.