505 A.2d 639

Dana Corporation, et al., Appellants *v.* William P. Wentz, Jr., et al., Appellees.

Plymouth Meeting Mall, Inc., Appellant *v.* Montgomery County Board of Assessment Appeals, et al., Appellees.

Rouse-Plymouth, Inc., Appellant *v.* Montgomery County Board of Assessment Appeals, et al., Appellees.

SPS Technologies, Inc., Appellant *v.* William P. Wentz, Jr., et al., Appellees.

The Estate of A. H. Weiss, et al., Appellants *v.* Montgomery County Board of Assessment Appeals, et al., Appellees.

270

Argued November 15, 1985, before Judges MAC-PHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Henry T. Reath,* with him, *Robert B. Parks, Duane, Morris & Heckscher,* for appellants, Dana Corporation, et al.

*William H. Bradbury, III, Wright, Manning & Sagendorph,* for appellants, Plymouth Meeting Mall, Inc. and Rouse-Plymouth, Inc.

*Jeremiah J. Cardamone,* with him, *Ann Thornburg Weiss, Timoney, Knox, Hasson & Weand,* for appellant, SPS Technologies, Inc.

*Edward J. Hughes, Kaufman & Hughes,* for appellants, Estate of A. H. Weiss, deceased, et al.

*Bernard A. Moore,* Solicitor, with him, *Bert M. Goodman,* Assistant County Solicitor, for appellee, Montgomery County Board of Assessment Appeals.

*Bruce J. Eckel,* Assistant County Solicitor, for appellee, County of Montgomery.

*Marc B. Davis, Pearlstine, Salkin, Hardiman & Robinson; Andrew B. Cantor,* with him, *Cassin W. Craig* and *Charles Potash, Wisler, Pearlstine, Talone, Craig & Garrity; Gilbert P. High, High, Swartz, Roberts & Seidel; John F. Walsh, Phillip R. Detwiler & Associates,* and *Parke H. Ulrich, Fox, Differ, Callahan, Ulrich & O'Hara,* for other appellees.

OPINION BY JUDGE MACPHAIL, February 25, 1986:

Dana Corporation, Plymouth Meeting Mall, Inc., Rouse-Plymouth, Inc., SPS Technologies, Inc., and The Estate of A. H. Weiss (collectively referred to as "Taxpayers") appeal here an order of the Court of Common Pleas of Montgomery County which approved the common level ratio and the assessment methodology used by the Board of Assessment Appeals (Board) in Montgomery County in assessing Taxpayers' real estate for the years 1977-1983.

This case began when the Marriott Corporation filed a timely appeal challenging its assessment by the Board for the 1977 tax year. Separate tax appeals were subsequently filed by Taxpayers herein. By orders dated December 2, 1981 and February 9, 1983, all pending tax appeals challenging the common level ratio were consolidated. The proceedings were then bifurcated by the trial court into separate hearings on the common level ratio issue and the fair market

value and assessment of the Marriott. Only the issue of the common level ratio is before us on appeal.[1]

In its opinion in support of its order, the trial court noted that the issue in the appeals was whether the Taxpayers' properties were properly and uniformly assessed for taxation purposes. Taxpayers contended before the trial court and argue here that their assessments were excessive, contrary to law and that the Board's common level ratio of 17% was unjust, improper and lacked uniformity. The trial court phrased the issue before it in these terms:

> The common question presented here is whether the method for determining assessed values based on the application of the uniform assessment ratio (17%) to adjusted market values is lawful where the adjusted market value is determined by applying a uniform adjustment factor to market values established for the base year 1976?

Slip op. at 3. The trial court decided that the Board's methodology complied with statutory requirements.

In their appeals, Taxpayers challenge that methodology contending that it is not in accord with traditional methodology for ascertaining the common level ratio. They argue that the court erred in ruling that the Board had used the correct market data in arriving at the property assessments and in ruling that it was not the Board's burden to show that all properties appreciate in value at a uniform rate over a given period of time.

Our scope of review in a tax assessment appeal is restricted to a determination of whether the trial

---

[1] The trial court's order in this respect was interlocutory but the court certified its order for immediate appellate review pursuant to the provisions of 42 Pa. C. S. §702(b) and we granted the appeal.

court committed an error of law or abused its discretion. *In the Matter of Harrisburg Apartments, Inc.,* 88 Pa. Commonwealth Ct. 410, 489 A.2d 996 (1985). The trial court's findings must be given great force and will not be disturbed unless clear error appears. *Id.*

In this case, the determination of whether the Board's uniform assessment ratio of 17% is valid depends upon whether the Board's use of a so-called "backtrending" of arriving at assessed values is in accord with the duty imposed upon the Board by the assessment law. We agree with the trial court that this is a purely legal question.

Section 3 of the Act of June 26, 1931, P.L. 1379 (Act), 72 P.S. §5344 provides in pertinent part:

It shall be the duty of said board, in each county to which this act applies, to make and have supervision of the making of annual assessments of persons, property and occupations now or hereafter made subject to assessment for taxation for county, borough, town, township, school, poor and institution district purposes, and to make and have supervision of listing and valuation of property excluded or exempted from taxation. In making assessments of property at less than actual value, it shall accomplish equalization with other properties within the taxing district.

In *Deitch Co. v. Allegheny Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965) our Supreme Court outlined the process to be used where property tax assessments were based on something less than 100% of actual value. The Court said:

[R]eal estate . . . is to be assessed at its actual value. The term actual value means the market value and market value has been defined as a price which a purchaser, willing but not

obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. . . . [A]s a practical matter, . . . real estate is frequently assessed at a percentage which is less than market value. . . . [T]he assessors should accomplish equalization of the subject property in accordance with other assessments in the taxing district. And more importantly, Article IX, §1, of the Constitution of Pennsylvania provides that all taxes must be uniform on the same class of subjects within the territorial limits of the authority levying the tax.

. . . .

[A] taxpayer should pay no more or no less than his proportionate share of the cost of government. Implementation of this principle would require that an owner's assessment be reduced so as to conform with the common level assessment in the taxing district. . . .

Of course, the question arises as to the definition of the term 'common level'. Where the evidence shows that the assessors have applied a fixed ratio of assessed to market value throughout the taxing district, then that ratio would constitute the common level. However, where the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios may be considered the 'common level'. . . . [I]t may be that the evidence will show some percentage of assessed to market value about which the bulk of individual assessments tend to cluster, in which event such percentage *might* be acceptable as the common level.

417 Pa. at 217-21, 209 A.2d at 400-01 (citations and footnotes omitted) (emphasis in original).

In the case *sub judice,* as is usual in most property tax assessment appeals, the evidence upon which the trial court based its findings and conclusions came largely from the testimony of two expert witnesses, Dr. Edelstein for the Taxpayers and Mr. Gustafson for the taxing authorities. In analyzing this conflicting testimony, the trial court found both witnesses to be credible but gave more weight to Mr. Gustafson's testimony.[2]

Both experts used the so called "stratification" method of obtaining sales data to determine the common level ratio in the instant case. This methodology was approved in *Keebler Co. v. The Board of Revision of Taxes of Philadelphia,* 496 Pa. 140, 436 A.2d 583 (1981). Stratification means analyzing the property values by use type such as residential, commercial, industrial, etc. In the instant case, Dr. Edelstein used six such categories; Mr. Gustafson used three. Mr. Gustafson testified, however, that that difference was irrelevant (R.R. at 507A). To obtain a common level ratio for the 1983 tax year, Dr. Edelstein obtained an estimated fair market value for all real estate in the county based upon 1980 sales data, totalled up all assessments for that real estate and divided the sum of the assessments by the sum of the estimated fair market values. The result was a ratio of 11.55%. Using the same process, Mr. Gustafson would arrive at a common level ratio of 12.4%. For 1982, Dr. Edel-

---

[2] The trial court accorded more weight to Mr. Gustafson's testimony because it found that he utilized a data base which was more consistent with the time restriction imposed by statute for annual assessments and because Dr. Edelstein did not properly exclude non-arms length transactions and vacant land sales which were later assessed on an improved basis.

stein's result was 10.6%; Mr. Gustafson's result was 11.8%.

Mr. Gustafson said that his calculations were more reliable than Dr. Edelstein's because he used a different "editing" of data by eliminating some sales data he thought distorted the actual current market values and he considered only those sales which occurred in the period ending March 1 of the year preceding the tax year. Mr. Gustafson said that inasmuch as the Board was obligated by law to prepare its assessment rolls by July 15, it was unrealistic to consider sales for the entire year, that is, sales made after the assessment roles were made up. Notwithstanding the differences in methodology used by the experts, we note that the end results are not very disparate.

Where the two experts "part company", however, is in Mr. Gustafson's implementation of the Board's "backtrending" method of obtaining estimated current market values. In 1976, the Board did a property by property reevaluation of all of the taxable real estate in the county and made those values effective for assessment purposes January 1, 1978. At the same time, the county established an assessment ratio to fair market value of 17%. Thus, a property with an estimated fair market value of $100,000.00 would have an assessed value of $17,000.00. The Board, however, recognizing that there was an inflationary trend in real estate values, which it estimated to be .9 of a percent per month, backtrended for each tax year market values by applying a deflation rate of .6% per month to establish an adjusted market value as of January 1, 1976. The figure of .6% was selected because the Board was of the opinion that that figure was the inverse or obverse of .9%.[3] Using that methodology,

---

[3] We agree with Taxpayers that the actual figure should be .68% or .7% if rounded off. Using the figure of .6% will result in

Mr. Gustafson arrived at a common level ratio of 16.8% for 1981 and 17.4% for 1982. Since those figures are very close to the Board's pre-determined 17% figure, Mr. Gustafson was of the opinion that it was a valid and reliable common level ratio.

Taxpayers challenge this methodology on several grounds. They argue that the Board has no statistical data to support the deflation factor; that the use of a fixed deflation factor assumes that all properties appreciate in value at the same rate, an assumption refuted by evidence produced by Taxpayers' expert witness; and that the application of a fixed deflation factor to property values which do not remain static over time violates the rule of uniformity by requiring some property owners to bear a larger share of the tax burden than others.

Taxpayers direct our attention to the testimony of Mr. William Wentz, Chairman of the Board of Assessment Appeals of Montgomery County, in support of their contentions. Mr. Wentz testified that "[b]ack-trending is analyzing neighborhoods within municipalities at current market values and where necessary those values are discounted back to 1976 dollar values in order to achieve uniformity." (R.R. at 623A) When asked on direct examination what evidence was used to satisfy the uniformity of "backtrending" throughout the county, Mr. Wentz responded:

> We ran simple ratio studies and analyzed them. We are not statisticians but I think they were ample to supply us with the information and I think we were rather confident of the results of those simple ratio studies. . . .

(R.R. at 636A-637A.) In a deposition taken from the

---

a slight overstatement of a given property's adjusted market value as of January 1, 1976.

same witness prior to trial, the following testimony was elicited:

> Q: Now, can you show me today any data, collection of data that was developed by your office that would support the determination that there was an appropriate, uniform six percent [sic] rate of deflation to be used in Montgomery County?

> A: No, sir, I can't, and I never indicated that it was a steady six-tenths.

(R.R. at 642A.)

> . . . .

> Q: 'The '79, '80 and '81 ratio that has been applied, that means the ratio used by the county that has been applied, was that based on any statistical study?

> A: No, we have no statisticians in our Department.'

(R.R. at 645A.-646A.)

From that testimony, we must conclude, therefore, that there is no evidentiary support for the Board's common level ratio pre-determined and applied as of January 1, 1978 for tax years beyond 1978. The only justification advanced by the Board is that by using backtrending, one can arrive at figures close to the pre-determined ratio. Backtrending is valid only if all real property appreciates at a uniform rate since only one factor, .6, was applied to all properties in each tax year. There is no evidence in the record that all real estate did appreciate at a uniform rate in the tax years in question. We agree with Taxpayers that the burden of proving the validity of the Board's methodology was upon the Board. *See Strawbridge & Clothier v. Board of Assessment Appeal of Delaware County*, 89 Pa. Commonwealth Ct. 198, 492 A.2d 108 (1985). That burden would include proof

that all property values did *in fact* appreciate at the same rate in the tax years at issue and that the deflation factor was appropriate for all real estate.

In its opinion, the trial court noted that Section 7 of the Act, 72 P.S. §5348, had been amended by Section 4 of the Act of December 13, 1982, P.L. 1165 to provide that when the Board makes its annual assessment revisions, it may utilize the current market value "or it may adopt a base year market value" in determining actual value. While the court noted that the 1982 amendment could not control its disposition of the issue before it because the effective date thereof was beyond the tax years in question, the court did state that the enactment of the amendment gave *sub silentio* guidance to the court and reinforced the court's opinion that the backtrending methodology resulted in proper and uniform assessments. Again, we must respectfully disagree. Had the Legislature intended its action to apply retrospectively, it would have so provided. It is our opinion that the proper interpretation of the legislative intent was that from the effective date of the amendment forward, the Board could use an alternative method for arriving at actual value, a method not previously authorized by the Legislature.

In Finding of Fact No. 13 (slip. op. at 7) the trial court stated:

> The method used by the two (2) experts to arrive at the common level ratio, and the method used by the Board trending back to the base year, results in almost identically the same assessment figure for a given property.

There is nothing we can find in the record to support that finding. While hypothetical figures were used and property value data was produced by the expert witnesses, there is no evidence that a given property

would have the same assessment whether the traditional method or backtrending was used. We believe the whole point of the appeal and the hearing was to show that the 17% common level ratio simply was not accurate and that a lower ratio should have been used. As we have noted, the two experts do agree, or come close to agreeing, that the common level ratio determined by the so-called traditional manner is approximately 12% for 1981 and approximately 11% for 1982. If one multiplies the estimated fair market value of a property by 12% or 11%, one simply cannot arrive at "almost identically the same assessment figure" as if one uses 17%.

We, accordingly, must reverse the trial court and hold that the common level ratio of 17% arrived at by the Board's method of backtrending does not comply with the law and cannot be used to determine the assessed values for the Taxpayers' properties.

### ORDER

The order of the Court of Common Pleas of Montgomery County, dated February 23, 1984, is vacated and remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.