517 A.2d 1372

Reichard-Coulston, Inc., Appellant *v.* Revenue Appeals Board Northampton County, Appellee.

Argued September 9, 1986, before Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Seth I. Davenport*, with him, *John E. Garippa*, for appellant.

*Leo DeVito, Jr.*, with him, *John J. Bartos*, for appellee.

OPINION BY JUDGE BARRY, November 17, 1986:

This appeal results from an order of the Northampton County Court of Common Pleas (trial court) which established the assessment value of certain property belonging to the appellant, Reichard-Coulston, Inc. The taxing authority, Revenue Appeals Board of Northampton County, is the respondent in the present appeal.

The involved property consists of approximately 20.5 acres on which is erected a heavy manufacturing facility owned and operated by the appellant. The facility con-

sists of sixteen buildings, many of which were built in the late nineteenth and early twentieth centuries, though improvements and additions have also recently been made. The undertaking at the facility is the manufacture of iron oxide pigments for the paint industry.

After the taxing authority had established its 1984 assessment on appellant's property, the latter sought *de novo* review in the trial court. At trial, the parties stipulated that the Common Level Ratio (CLR) for the county[1] was 22.4%, and the testimony presented thereafter thus addressed only the market value of the property. Experts of both parties testified to such values using the "Market Data Approach" and the "Cost Approach."

Noting that it was "not bound to accept the valuation testimony of the experts," the trial court concluded that the cost approach was the most appropriate for the involved property. The trial court then performed the following calculation:

> Using the Cost Approach, we conclude that the market value of the land in the 1984 tax year was $1,163,840.00. This figure is reached by taking a reproduction cost new of $3,012,800.00 and subtracting a depreciation rate of 70%, to arrive at $903,840.00. The value of the land itself of $260,000.00 is then added, arriving at the final value of $1,163,840.00.

*Trial Court op.* at 5. The trial court in turn applied the CLR of 22.4% to the market value, establishing the assessment value at $260,700.16. Appellant then initiated the present appeal.

---

[1] For discussion of the concept of the common level ratio, *see Strawbridge & Clothier v. Board of Assessment Appeal*, 89 Pa. Commonwealth Ct. 198, 201-02, 492 A.2d 108, 109 (1985).

Our own scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by the evidence. *Appeal of Duquesne Club,* 92 Pa. Commonwealth Ct. 15, 17 n.1, 498 A.2d 459, 460 n.1 (1985). Appellant maintains, as its only argument, that the trial court committed an error of law in relying on the cost approach in determining the market value of the property. We disagree and hence affirm.

The challenged method of property valuation entails (1) estimating the value of the *land* "assumed vacant and available for its highest and best use;"[2] (2) estimating the reproduction cost or "cost new" of the facility;[3] (3) subtracting from the latter amount the facility's depreciation;[4] and (4), finally, adding to this depreciated balance the value of the land ((1), above).[5] This method is in contrast to the market approach, under which comparative sales are considered in order to establish a value corresponding to "the price at which a purchaser, willing but not obligated to buy, would pay an owner, willing but not obligated to sell, taking into consideration all uses to which the property is adopted and might in reason be applied." *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 126-27, nn. 7 & 10, 447 A.2d 317, 320 nn. 7 & 10 (1982). *Cf. N.T.,* 1/22/85, at 10-12.

---

[2] *N.T.,* 1/22/85, at 21 (testimony of M. Lerario).

[3] *Id.* ("[Such cost] is estimated based on physical inspection of the property and utilization of accepted cost manuals.").

[4] *Id.* ("Depreciation is then deducted. Depreciation is a deduction from cost new based on physical, functional and economic deterioration and absolescences [sic].").

[5] *Id.* at 21-22 ("To arrive at a depreciated cost new of the improvements, to that is added back the value of the land to arrive at an indication of value by the Cost Approach.").

In the present case, the trial court, as evident from its opinion, believed that the cost approach was a more accurate way to derive market value, given the nature of the expert testimony offered:

> We believe the Cost Approach to be a more accurate method of valuation in the instant case. The comparable sales under the Market Approach ranged from $3.00 to $9.00 per square foot. In the Cost Approach, this particular property itself can be considered, and depreciation deducted by examining the unique features of the property.

*Trial Court op.* at 5. The court thereupon utilized (1) a *land* value figure; (2) a reproduction cost calculation; and (3) a depreciation percentage, *all* figures within the range of the expert testimony, to arrive at market value.

Appellant maintains that the foregoing utilization of the cost approach on the part of the trial court constituted error, given the long-standing judicial declaration that the "reproduction cost [approach] has no probative value for any purpose in fixing the fair market value of improved real estate for tax purposes." *City of Wilkes-Barre Indus. Development Auth. v. Board of Tax Assessment Appeals,* 89 Pa. Commonwealth Ct. 182, 188, 492 A.2d 113, 116 (1985) (citing, *inter alia, U.S. Steel Corp. v. Board of Assessment and Revision of Taxes,* 422 Pa. 463, 223 A.2d 92 (1966)). Appellant further offers to us scholarly authority for the proposition that the cost approach is inappropriate for the valuation of "any property on which the improvements are not new,"[6] given the difficulties involved in measuring depreciation.

However reasonable appellant's arguments, they are advanced in practical disregard of the legislature's re-

---

[6] W. Kinnard & S. Messner, *Industrial Real Estate* 473 (2d ed. 1979).

cent action in the assessment realm. While it is true that for many years the cost approach was held to be without probative value, the tax law *now* provides, in pertinent part:

> *Revision of assessments and valuations by board; assessment roll; exemption list.*
>
> . . . .
>
> (d) In arriving at actual value [for assessment purposes] the price at which any property may actually have been sold . . . shall be considered but shall not be controlling. Instead such selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the taxing district. *In arriving at actual value, all three methods, namely cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, must be considered in conjunction with one another.*

72 P.S. §5348(d) (Section 7(d) of the Act of June 26, 1931, P.L. 1379, *as amended by* Act of December 13, 1982, P.L. 1165) (emphasis added). We agree with the appellee that the above statute "evidences a legislative intent to have a revenue appeals board and trial court, as fact finder, consider all three approaches to valuing property."[7] The further, ineluctable conclusion to be drawn from this action by the legislature is that the cost approach is *now* to be considered as *possessing* probative value in arriving at property assessments. Consequently, as we view the legislature to be clearly within its powers in so acting, prior judicial pronouncements forbidding use of the cost approach now have no authority. We necessarily conclude, then, that the trial court judge committed no error in his consideration of the

---

[7] *Brief for Appellee* at 11.

cost approach, and conclude also that no abuse of discretion was committed in his particular application of it in the present case.

As apparent from our above recital of the trial court opinion, the testimony regarding the market approach was so conflicting that it was apparently thought untrustworthy. In contrast, the calculations included in the experts' testimony under the cost approach resulted in assessment values thought by the trial court to be more consistent and credible.[8] A choice of the latter approach, given the trial court's view of the evidence, was within that court's discretion, and will not be disturbed by this court. *City of Wilkes-Barre,* 89 Pa. Commonwealth Ct. at 185, 492 A.2d at 115. Further, the fact that both experts *acknowledged* the difficulties in calculating depreciation does not, as alleged by appellant, compel a different result. The legislature has empowered the fact-finding authorities to employ the cost approach in arriving at assessment values, and this court will not sit as a "Super-Board of Appraisement" to second guess its judgment. Finally, we note that the final valuation was within the range of value supplied by the experts, showing, thereby, that the trial court "properly performed its role as fact finder." *Appeal of Duquesne Club,* 92 Pa. Commonwealth Ct. at 19, 498 A.2d at 462 ("the fact that the trial court's determination of the [fair

---

[8] *See Trial Court op.* at 5:
All of [the cost approach figures utilized in our computation] are within the range of the expert testimony presented at trial. Petitioner's [taxpayer's] expert applied a depreciation rate of 93%, and Respondent's expert applied depreciation rates ranging from 15 to 40%. Petitioner's expert valued the land at $250,000.00; Respondent's expert was of the opinion that the land was worth $269,000.00. Both experts concluded that the reproduction cost new of the subject property was over three million dollars.
*Id.*

market value] lies between the valuations offered by the expert witnesses indicates that it properly performed its role as fact finder.")[9]

Affirmed.

ORDER

Now, November 17, 1986, the Order of the Northampton Court of Common Pleas, No. 1983-C-8320, dated March 29, 1985, is hereby affirmed.

---

[9] Appellant has not advanced *any* argument, constitutional or otherwise, premised on the view that the legislature lacks the authority to promulgate a rule attributing to particular evidence probative value *after* the judiciary has held to the contrary. We know, in any case, of no support for such an argument—there is certainly no constitutional provision so declaring, nor is such attribution *irrational*, and thus "beyond the power of the legislature, even irrespective of constitutional restrictions." *Leahey v. Farrell*, 362 Pa. 52, 55-56, 66 A.2d 577, 578-79 (1949).

It is true that in *Rich Hill Coal Co. v. Bashore*, 334 Pa. 449, 7 A.2d 302 (1939), the Supreme Court held unconstitutional a provision of the workmen's compensation law which established the following as a rule of evidence:

When an employee sustains an injury in the course of his employment, declarations, remarks and utterances made by the injured employee within twelve hours after the injury was sustained shall be admissible as competent evidence.

Section 201.1(b) of the Act of September 29, 1938 [now repealed], *amending* The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736. This rule led to tremendous due process concerns over the hearsay implications inherent in the statute. In response, the *Rich Hill* Court declared that "[n]ot even an act of legislation can give probative value to a statement that has none. The legislature has no control over the laws of logic." 334 Pa. at 484, 7 A.2d at 319.

The foregoing declaration is, however, patently inapplicable to section 5348. We are unwilling to characterize the legislature's adjuration that the cost approach be utilized as irrational, simply because many or most scholars think the approach is inappropriate for certain properties because of depreciation calculation problems. This hardly rises to the evidentiary illogic dealt with in *Rich Hill*.

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

The issue is whether the trial judge, in the trial de novo, based his determination of the fair market value of the property on competent and relevant evidence.

The record indicates that each party arrived at widely disparate opinions of the fair market value of appellant's property. Each considered the market data and the reproduction cost less depreciation approaches and testified extensively on each. However, the expert for the property owner testified concerning difficulties in using the cost approach and said he relied on the market data approach in arriving at his fair market value of $450,000. The expert for the Board said he gave little weight to the reproduction cost and relied basically on the market data approach and arrived at a fair market value of $1,177,400.

The trial judge based his finding of fair market value exclusively on the reproduction cost less depreciation approach. This was an improper method of valuation and cannot be sustained. In his opinion, the trial judge said:

> We believe the cost approach to be a more accurate method of valuation. . . . Using the cost approach we conclude that the market value was $1,163,840. This figure is reached by taking a reproduction cost new of $3,012,800 and subtracting a depreciation rate of seventy percent to arrive at $903,840. The value of land itself of $260,000 is added arriving at the final value of $1,163,840.

In the exercise of appellate review, we must determine whether the trial court's finding *is based on a proper legal foundation in determining fair market value.* The finding of value by the trial court must be supported by competent evidence. *Traylor v. Allen-*

*town,* 378 Pa. 489, 106 A.2d 577 (1954); *Algon Realty Co. Tax Assessment Appeal,* 329 Pa. 321, 198 A. 49 (1938).

Section 7 of the Act (Act) of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. §5348, as applicable to this county in determining the valuation of real estate for tax assessment purposes provides:

(d) In arriving at actual value, the price at which any property may actually have been sold, . . . shall be considered but shall not be controlling. . . . In arriving at the actual value, all three methods, namely, cost (reproduction or replacement, as applicable, less depreciation . . . ), comparable sales and income approaches, must be considered in conjunction with one another.

(e) The Board shall apply the established predetermined ratio to the actual value of all real property to formulate the assessment roll.

In interpreting "actual value" our Supreme Court has said that it means nothing more or less than market value. Market value is defined in terms of the willing buyer—willing seller concept.

A reading of section 7 of the Act, 72 P.S. §5348, shows clearly that it was the intent to continue this concept of "actual value." For example, section 7 of the Act, 72 P.S. §5348, provides that in an appeal of an assessment, the Board shall make a determination of the current market value for the tax year in question, and that the common level shall be applied after determining the current market value; that the Board shall continue a list of the prices for which property would bona fidely sell; that the assessed value shall not exceed one hundred percent of actual value; and that in arriving at actual value the county may utilize the current market value or it may adopt a base year market value.

Because reproduction cost is based on the present cost of the buildings less depreciation, our Supreme Court has repeatedly said that this approach has no probative value for any purpose in fixing fair market value of improved real estate for tax purposes. *Baldwin-Lima-Hamilton Corp. Appeal,* 412 Pa. 299, 194 A.2d 434 (1963). Not even the legislature can give probative value to something which has no such quality. *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 7 A.2d 302 (1939).

The fact that the legislature provided in the Act that "the price at which any property may actually have been sold shall be considered but shall not be controlling," section 7 of the Act, 72 P.S. §5348(d), did not change the concept of "actual value," in the sense of the willing buyer—willing seller concept; nor did it create a new statutory method of assessment. Such a sale never was *controlling.* Rather, it was a factor which the expert could consider in arriving at his opinion of the fair market value.

An expert may testify concerning the sales of comparable properties as one of the factors which was considered in arriving at an opinion of fair market value of the real estate. One of the reasons that a sale of the same or comparable properties is admissible as evidence, *but not controlling,* is that properties may be similar for comparison purposes without being identical, and the difference is a matter of weight for the fact finder. *Moodie v. Westinghouse Electric Corp.,* 367 Pa. 493, 80 A.2d 734 (1951).

There is no provision in the Act which specifically enables a party to independently introduce evidence of reproduction cost. The Act simply makes reproduction cost a factor which the expert may use to compare or check with his estimate of fair market value. It is an error to rely exclusively upon that factor in determining market value.

The record indicates and the trial court's opinion shows that the trial judge discarded the market data approach in arriving at his opinion of fair market value, and relied exclusively on the cost approach. He did not consider the cost approach in conjunction with the market data approach, nor did he use the cost approach to check on his result. *See Pittsburgh-Des Moines Steel v. McLaughlin,* 77 Pa. Commonwealth Ct. 565, 466 A.2d 1092 (1983).

Accordingly, I would reverse the trial court.