853 A.2d 1162 (2004)
ADAMS ELECTRIC COOPERATIVE, INC., Petitioner,
v.
COMMONWEALTH of Pennsylvania, Respondent.
Allegheny Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Bedford Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Claverack Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
New Enterprise Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Northwestern Rural Electric Cooperative Association, Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Tri-County Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Warren Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Sullivan County Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Somerset Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Southwest Central Rural Electric Cooperative Corporation, Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
United Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Valley Rural Electric Cooperative, Inc., Petitioner,
v.
Commonwealth of Pennsylvania, Respondent.
Commonwealth Court of Pennsylvania.
Argued March 3, 2004.
Decided July 16, 2004.
*1164 Joseph C. Bright, Harrisburg, for petitioners.
Michael A. Roman, Harrisburg, for respondent.
BEFORE: COLINS, President Judge, and SMITH-RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, and COHN, Judge.
OPINION BY Judge SMITH-RIBNER.
Petitioners Allegheny Electric Cooperative, Inc. (AEC) and twelve other non-profit electric cooperative corporations and Respondent Commonwealth of Pennsylvania, pursuant to this Court's order of August 13, 2003, have filed a Joint Application for Partial Summary Judgment along with a Joint Stipulation of Facts in Petitioners' consolidated petitions for review of orders of the Board of Finance and Revenue.[1] At issue is the interpretation of the Act commonly known as the Public Utility Realty Tax Act (PURTA), Article XI-A (Sections 1101-A-1112-A) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, added primarily by Section 3 of the Act of July 4, 1979, P.L. 60, 72 P.S. §§ 8101-A-8112-A. Section 1101-A of PURTA, 72 P.S. § 8101-A, defines a public utility to include an electric cooperative corporation "furnishing public utility service." Petitioners contend that Section 1101-A does not impose PURTA taxes on those electric cooperatives that provide electric energy only to their members. They also contend that electric cooperative corporations that pay the electric cooperative membership tax and provide electric energy only to their members are exempt from PURTA taxes pursuant to the provision of Section 7333 of the Electric Cooperative Law of 1990, 15 Pa.C.S. § 7333, that exempts electric cooperative corporations from "all other State taxes of whatsoever kind or nature."

I
Petitioners are non-profit electric cooperative corporations formed and organized under the former Electric Cooperative Corporation Act (1937 Electric Cooperative Act), Act of June 21, 1937, P.L.1969, as amended, formerly, 15 P.S. §§ 12401-12438, repealed by Section 401 of the Act of December 19, 1990, P.L. 834, and now governed by the Electric Cooperative Law of 1990, 15 Pa.C.S. §§ 7301-7359. Unlike electric public utilities subject to the jurisdiction of the Pennsylvania Public Utility Commission (PUC), electric cooperatives subject to the Electric Cooperative Law of 1990 provide energy exclusively to their members who are located in predominantly rural areas of Pennsylvania. Jt. Stip. ¶¶ 6, 10. AEC provides electric energy at wholesale to its electric cooperative members, and the electric cooperatives distribute the energy purchased from AEC at retail to their members. Neither AEC nor the named distribution electric cooperative Petitioners have ever provided electric energy to the general public. Jt. Stip. ¶¶ 43, 44. The PUC has never regulated the electric cooperatives' services to their members in any manner. Jt. Stip. ¶¶ 13, 22. The electric cooperatives are subject to the cooperative membership tax imposed by Section 7333 of the Electric Cooperative Law of 1990, and for each of the *1165 tax years at issue they timely filed the required cooperative membership tax returns and paid the applicable taxes to the Department of Revenue (Department), which reviewed and settled as filed each of those cooperative tax returns. Jt. Stip. ¶ 37.
Pursuant to authorization provided by Article VIII, Section 4 of the Pennsylvania Constitution in 1968, PURTA eliminated the general exemption of public utility real property from local real estate taxation. Because public utilities own very expensive pieces of real estate in one area that service large portions or entire regions of the state, the legislature enacted PURTA to spread the equivalent of the real estate tax receipts from all utilities proportionately among all local taxing authorities. Safe Harbor Water Power Corp. v. Judge, 758 A.2d 259 (Pa.Cmwlth.2000) (Safe Harbor I). Under Section 1102-A of PURTA, 72 P.S. § 8102-A, the Department collects the equivalent of local real estate tax from public utilities at statutorily prescribed rates; the Department then distributes those revenues to local taxing authorities throughout Pennsylvania. Id. Pursuant to Section 1104-A of PURTA, 72 P.S. § 8104-A, if the amount the Department determines to be distributed exceeds the amount collected under Section 1102-A, the Department is required to assess an additional, supplemental tax (the Suptax).
In December 1998 the Department sent to gas and electric public utilities and also to AEC notices of additional assessments and determinations of 1997 PURTA taxes. Twenty-two gas and electric companies, including AEC, filed petitions in this Court's original jurisdiction, which the Court consolidated, challenging portions of PURTA and seeking relief from payment of the Suptax. AEC asserted in addition that PURTA did not apply to it at all because it had been judicially declared to be not a public utility and it had not been shown to own public utility realty used to provide "a public utility service" as required by PURTA. The Commonwealth filed preliminary objections in the nature of a demurrer to each petition. This Court overruled the preliminary objections in Safe Harbor I. The decision addressed the question of whether the Department is required to "settle" the Suptax with the taxpayer, i.e., to make an administrative determination and to provide a detailed calculation of the tax, and it noted that an objection to AEC's separate claims was not timely made and in any event a determination of the question would require development of a factual record.
Before the Court reached its decision on the preliminary objections, the Department undertook collection of the additional tax. Petitioners paid the tax and then filed for refunds, which were denied. They filed appeals from the orders of the Board of Finance and Revenue, which were consolidated with the original jurisdiction cases. On cross-applications for special and summary relief, the Court in Safe Harbor Water Power Corp. v. Williams, 825 A.2d 733 (Pa.Cmwlth.2003) (Safe Harbor II), granted the applications of the Commonwealth and denied those of the companies, overruling the previous conclusion that the Department was required to settle the Suptax before imposing it. Appeals from that decision disposing of the settlement issue are pending. As noted above, the Court directed the filing of applications for partial summary judgment and an associated stipulation of facts regarding the separate issues of whether the cooperatives are subject to the tax under the terms of PURTA and whether they are exempted under the exemption provision of the Electric Cooperative Law of 1990.

II
Petitioners essentially argue together their theories that PURTA does not apply *1166 to them because they do not furnish public utility service and that they are exempt under the Electric Cooperative Law of 1990. They quote Section 7333 of the Electric Cooperative Law of 1990: "Electric cooperative corporations subject to this chapter shall pay annually, on or before July 1, to the Department of Revenue a fee of $10 for each 100 members or fraction thereof, but shall be exempt from all other State taxes of whatsoever kind or nature." Petitioners note that this is a reenactment of an identical provision in former Section 31 of the 1937 Electric Cooperative Act, formerly 15 P.S. § 12431. Other pertinent language reenacted in 1990 includes that the statutes applicable to electric cooperative corporations "are complete in themselves and shall be controlling," 15 Pa.C.S. § 7302(b) (see former Section 38, formerly 15 P.S. § 12438), and that electric cooperatives "shall be exempt in any and all respects from the jurisdiction and control of the Pennsylvania Public Utility Commission," 15 Pa.C.S. § 7334 (see former Section 32, formerly 15 P.S. § 12432).
Article VIII, Section 4 of the Pennsylvania Constitution provides that the "real property of public utilities is subject to real estate taxes imposed by local taxing authorities" but also provides that payment to the Commonwealth of gross receipts taxes or special taxes by a public utility and distribution of that amount to local taxing authorities shall be "in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service." The standard PURTA tax and the PURTA Suptax are imposed upon property of a "public utility," which is defined in Section 1101-A(2) of PURTA, 72 P.S. § 8101-A(2), as:
Any person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission or the corresponding regulatory agency of any other state or of the United States on December 31 of the taxable year; and any electric cooperative corporation furnishing public utility service on December 31 of the taxable year, but shall not mean any public utility furnishing public utility sewage services, or municipality or municipality authority furnishing public utility services. (Emphasis added.)
Petitioners contend that the legislature's careful choice of the qualifying language "furnishing public utility service" in the second clause of the definition shows a clear intent not to subject all electric cooperative corporations to PURTA taxes but rather only those that furnish public utility service. They stress that Section 102 of the Public Utility Code, as amended, 66 Pa.C.S. § 102, expressly defines "public utility" to exclude "[a]ny bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis," as did its predecessor Section 2 of the former Public Utility Law (Public Utility Law), Act of May 28, 1937, P.L. 1053, as amended, formerly 66 P.S. §§ 1102, repealed by Section 2 of the Act of July 1, 1978, P.L. 598.
Petitioners rely upon the Supreme Court's holding in Pennsylvania Elec. Co. v. Morrison, 354 Pa. 472, 47 A.2d 810 (1946), which was the appeal from a denial of a request by a public utility to enjoin the Secretary of the Commonwealth and the Department of State from issuing a certificate of incorporation to the same AEC involved in the present case unless it secured a certificate of public convenience from the Public Utility Commission. Construing provisions of the Public Utility Law and of the 1937 Electric Cooperative Law, the Supreme Court stated:
[N]o matter how similar a cooperative and a public utility may be in fact, a cooperative is not a public utility within *1167 the meaning of the Public Utility Law. Sec. 2(17)(g) of that statute expressly provides that `The term `Public Utility' shall not include * * * (b) any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis; * * *.' Such is the very character of cooperative association whose incorporation is authorized and prescribed by the Electric Cooperative Corporation Act. The proposed Allegheny Electric Cooperative, Inc. will be empowered, as the Act permits, to generate electric energy and to distribute and sell such energy to its stockholders or members on a non-profit basis. Thus, it qualifies as a true cooperative and is therefore not a public utility as a matter of law....
Morrison, 354 Pa. at 476, 47 A.2d at 812 (citation omitted).
Petitioners argue that under the former and present electric cooperative statutes, under the former and present general public utility laws and under the longstanding interpretation in Morrison, electric cooperatives as a matter of law are not "public utilities" and therefore generally are not "furnishing public utility service" within the meaning of Section 1101-A(2) of PURTA.[2] They maintain that the inclusion of this limiting phrase in the definition must have been intended to preclude an electric cooperative from extending its exemption from state taxes beyond its traditional activities by acquiring or otherwise attempting to place public utility assets or operations under the mantle of the electric cooperative, for example, by owning and operating PUC-jurisdictional public utilities through subsidiary corporations.
As additional support for their contention that PURTA was not intended to apply to electric cooperatives generally, Petitioners refer to American Telephone & Telegraph Co. v. Board of Property Assessment, Appeals and Review of Allegheny County, 461 Pa. 716, 337 A.2d 844 (1975). There the Supreme Court explained that at the time of the 1967-1968 Constitutional Convention, the inability of local taxing authorities to tax the real estate of public utilities was a cause of great concern, because a source of revenue escaped taxation and the presence of major utilities in local territories was seen as reducing the tax base. The committee that proposed a change did not view the direct taxation by local authorities as desirable, because it would result in a windfall to certain localities, while the cost of such taxes would be borne by all consumers over much wider territories. Petitioners assert that in the debates regarding the proposal that was adopted as Article VIII, Section 4 of the Constitution, no mention was made of electric cooperatives providing electricity solely to their members in rural areas. Further, Petitioners argue that imposing PURTA on the electric cooperatives' service to their members would contravene the public policy of promoting electric cooperatives by relieving them from the burden of state taxes.
In response the Commonwealth points out that the original version of PURTA was enacted in the Act of March 10, 1970, P.L. 168, as amended, formerly 72 P.S. §§ 3271-3278, repealed by Section 4 of the Act of July 4, 1979, P.L. 60, with a functionally equivalent definition of "public utility" to that now found in Section 1101-A(2) of PURTA. It contends that the *1168 definition identifies two categories of public utility for purposes of PURTA, namely, those entities subject to the jurisdiction of the PUC or a comparable agency and electric cooperative corporations. The Commonwealth agrees that Morrison holds that electric cooperatives are not public utilities for purposes of the Public Utility Law, but it disputes Petitioners' conclusion that electric cooperatives do not furnish "public utility service." It does not agree that the language "furnishing public utility service" subjects only wayward electric cooperatives that provide service to nonmembers or otherwise exceed their proper role to PURTA, arguing that such conduct would place the cooperative under the first clause of the definition, i.e., making it subject to the regulatory jurisdiction of the PUC and making the additional requirement mere surplusage.
The Commonwealth suggests that the legislature may not have intended a technical utility lawyer's reading of the words "public utility service." Rather, the phrase may be read in a more generic or common understanding manner as a method of distinguishing the provision of public utility service from some other activity in which a cooperative might engage. Also the Section 1101-A(2) definition recognizes that entities other than public utilities may provide public utility service in the express exclusion of municipalities and municipal authorities providing public utility service from the definition of "public utility."
In the alternative, the Commonwealth asserts that the Electric Cooperative Law of 1990, with its exemption in Section 7333 from payment of "all other State taxes of whatsoever kind or nature" apart from the standard fee based on membership specified in that section, is irreconcilable with PURTA under the Commonwealth's view that PURTA applies to all electric cooperatives. The Commonwealth quotes Section 1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1936: "Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." In addition, the Commonwealth refers to Section 1962, 1 Pa.C.S. § 1962, which states that when a statute is repealed but its provisions are reenacted in the same or substantially the same terms in the repealing act, the earlier statute shall be construed as continued in active operation and that rights and liabilities under it are preserved and may be enforced. Because the 1937 Electric Cooperative Act exemption from all other state taxes was continued in substantially the same terms in Section 7333 of the Electric Cooperative Act of 1990, and because PURTA was enacted originally in the Act of March 10, 1970, P.L. 168 and its definition of "public utility" as including any electric cooperative corporation "furnishing public utility service" was continued through later repeal and reenactment and amendment, the Commonwealth contends that the PURTA provision is the later one within the meaning of 1 Pa.C.S. § 1936.
In a reply brief Petitioners argue that the first clause of the PURTA Section 1101-A(2) definition provides a regulatory jurisdiction rule of inclusion and that the second clause provides a functional rule that includes and excludes entities based upon their function. Thus it excludes entities that furnish public utility sewage service and includes electric cooperative corporations only if they furnish public utility service. When the legislature wrote PURTA, it was aware of the Supreme Court's holding in Morrison that electric cooperatives were not public utilities under the Public Utility Law and aware of the 1937 Electric Cooperative Act with its general exemption for electric cooperatives from state taxes. Under the Commonwealth's *1169 interpretation that all electric cooperatives are subject to PURTA, the limiting phrase "furnishing public utility service" is read out of the statute, contrary to the principle of statutory construction requiring that statutes be construed, if possible, to give effect to all provisions. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); Commonwealth v. Philadelphia Elec. Co., 472 Pa. 530, 372 A.2d 815 (1977).
As for the Commonwealth's irreconcilability argument, Petitioners state that the parties agree that PURTA modified the laws governing electric cooperatives, but the real question is by how much. The limiting language of the Section 1101-A(2) definition reflects the legislature's concern that an electric cooperative could misuse its tax exemption. Petitioners note that in certain instances electric cooperatives have owned and operated PUC-jurisdictional public utilities through subsidiaries, as indicated in Paragraphs 33-35 of the Joint Stipulation. They assert that the cooperatives specified did not seek exemption for the realty of the acquired public utilities but that others might. When the language at issue is interpreted as a precaution against misuse of the state tax exemption, then PURTA and the statutes that have applied to electric cooperatives are not irreconcilable. Petitioners contend further that it is not credible to argue that the legislature enacted statutes that were irreconcilable on multiple occasions after the 1937 Electric Cooperative Act, including the 1970 PURTA act, the 1979 PURTA act, the Electric Cooperative Law of 1990 and the 1999 amendments to PURTA.
The Court concludes that Petitioners' interpretation is correct. As they note, if the legislature intended PURTA to apply to all electric cooperatives, it need only have included "electric cooperatives" in the definition of "public utility" without further modifying language. The Commonwealth's suggestion is not tenable that the legislature may have intended a non-technical common sense meaning for "furnishing public utility service" in the definition of "public utility" in an act designed to tax the realty of public utilities. Although PURTA, as a tax statute, was added to the Tax Reform Code of 1971, its subject matter is related to that of the Public Utility Code, and PURTA's reference to electric cooperatives necessarily implicates the electric cooperative statutes. It is presumed that the legislature first enacted PURTA in 1970 with full awareness of the holding in Morrison and with the intent to preserve its construction. 1 Pa.C.S. § 1922(4); Shambach v. Bickhart, 577 Pa. 384, 845 A.2d 793 (2004).
Petitioners' explanation of the function of the phrase "furnishing public utility service" to prevent misuse of the electric cooperatives' exemption, supported by examples in the Joint Stipulation, is entirely reasonable. The Court rejects the Commonwealth's suggestion that the phrase might apply to an electric cooperative's providing public utility service as opposed to its other activities, with no explanation of what activities it might engage in besides providing electricity. PURTA permits the equivalent of local taxation on very valuable parcels of public utility realty used in for-profit activity providing utility service to the general public and that serve often far-flung areas, and it provides for distribution of the revenue proportionately among all local taxing authorities. Safe Harbor I. Electric cooperatives are not organized as profit-making entities. Thus Petitioners are entitled to partial summary judgment in their petitions for review from the orders of the Board of Finance and Revenue holding them to be subject to PURTA taxes.

ORDER
AND NOW, this 16th day of July, 2004, the orders of the Board of Finance and *1170 Revenue in the above-captioned matters are reversed to the extent that the Board determined that Petitioners in delivering electric energy as electric cooperatives are subject to provisions of the Act known as the Public Utility Realty Tax Act, and Petitioners' motion for partial summary judgment is granted to that extent.
DISSENTING OPINION BY Judge PELLEGRINI.
I respectfully dissent. The majority reverses the orders of the Board of Finance and Review (Board) subjecting Adams Electric Cooperative and other electric cooperative corporations (collectively, the Cooperatives) to the Public Utility Realty Tax[1] because the majority finds that the Cooperatives, under Section 1101-A(2) of the Public Utility Realty Tax Act, 72 P.S. § 8101-A(2) (commonly known as PURTA), are not "electric cooperative corporation[s] furnishing public utility service" for purposes of taxation. (Emphasis added). I disagree with the majority because, under that provision, the PURTA tax is assessed upon (1) entities regulated by the Pennsylvania Public Utility Commission (PUC) or other similar state or federal agencies and (2) electric cooperatives that otherwise are not regulated but that furnish services similar to that of public utilities. Because the Cooperatives are unregulated electric cooperatives that furnish services similar to public utilities, I would hold that they are subject to PURTA and would affirm the orders of the Board.
The Cooperatives are all non-profit electric cooperative corporations formed under and subject to the former Electric Cooperative Corporation Act [2] and the Electric Cooperative Law of 1990, 15 Pa.C.S. §§ 7301-7359 (Electric Cooperative Law). The Cooperatives own property necessary to and used for the transmission or distribution of electric energy, and they furnish electric energy on a wholesale basis to their member cooperatives or furnish electric energy on a retail basis to their members. The PUC has never regulated the services the Cooperatives provide to their members.
The present dispute began in 1998 when the Department of Revenue (Department) issued notices of assessment for payment of PURTA tax for the 1997 tax year. The PURTA tax is imposed by the Commonwealth on the state taxable value of utility realty. 72 P.S. § 8102-A. After the Cooperatives and the Department litigated several other issues unrelated to the ones presented here, see Majority Op. at 4-5 (outlining the procedural history of this case), this Court directed that the Cooperatives file stipulations of fact and applications for partial summary judgment. At issue in this case is whether the Cooperatives are subject to the PURTA tax.
The majority holds that the Cooperatives are not subject to the PURTA tax because they do not "furnish public utility service," reasoning that if the General Assembly desired that all cooperatives be subject to PURTA, it would not have limited the definition of "public utility" to only those electric cooperatives "furnishing public utility service." The majority also reasons that although PURTA is a tax statute, its subject matter is related to and must be read in conjunction with the Public Utility Code, 66 Pa.C.S. §§ 101-3316, and the Electric Cooperative Law. In effect, the majority creates a "regulation = *1171 taxation" rule which is at odds with Section 1101-A(2) of PURTA.
The question of whether a specific entity is subject to regulation is one different from the question of whether that same entity is subject to taxation. The former requires an inquiry into the power of the regulatory body to subject a particular agency to its requirements as outlined in the agency's enabling statute. For instance, there is no question that electric cooperatives have been deemed by the General Assembly to fall outside the regulatory reach of the PUC. 66 Pa.C.S. § 102 (excluding bona fide electric cooperatives from the definition of "public utility"); see also Pennsylvania Electric Company v. Morrison, 354 Pa. 472, 47 A.2d 810 (1946). As a result, electric cooperatives such as the Cooperatives in this case need not follow the requirements of the Public Utility Code and the regulations of the PUC that regulated utilities must follow.
For purposes of PURTA, however, whether the Cooperatives are subject to taxation is unrelated to whether or not they are regulated. This is clear from the definition of "public utility" under PURTA. It provides that a "public utility" is:
Any person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission or the corresponding regulatory agency of any other state or of the United States on December 31 of the taxable year; and any electric cooperative corporation furnishing public utility service on December 31 of the taxable year, but shall not mean any public utility furnishing public utility sewage services, or municipality or municipal authority furnishing public utility services.
72 P.S. § 8101-a(2). Under this definition, the Commonwealth can assess the PURTA tax on (1) any regulated utilities furnishing public utility service and (2) any unregulated cooperatives that furnish public utility service. It also specifically exempts only the following entities: (1) any public utilities furnishing sewage services and (2) any municipalities or municipal authorities furnishing public utility services.
Under the majority's view, PURTA does not apply and, consequently, an electric cooperative is not subject to the PURTA tax unless that cooperative "furnishes public utility service" in the regulatory sense of the word. If that were so, PURTA would only apply to regulated public utilities and there would be no reason to add the clause relating to electric cooperatives furnishing public utility service. By including that clause and by not specifically exempting electric cooperatives from PURTA, the General Assembly must have meant to subject electric cooperatives to PURTA even though such entities are unregulated because the service they provide is similar to that of a regulated utility. Under the majority's interpretation, however, electric cooperatives are not subject to the PURTA tax unless the service they provide would bring them within the jurisdiction of the PUC or other similar regulatory body. What this interpretation does, essentially, is eliminate the entire clause that applies to electric cooperatives under Section 1101-A(2) of PURTA because none of the services provided by cooperatives fall within the jurisdiction of the PUC.
In addition, the PURTA tax is, at bottom, a tax on the property used in the furnishing of utility services, not a tax on the type of operations the company is engaged in. When property is used to provide utility service, whether the public receives that service or members of a cooperative receive that service, the property so used is properly subject to the PURTA tax. Under the majority's interpretation, the focus is no longer on the property *1172 subject to taxation, but on whether the cooperative is engaged in "furnishing public utility service" in the strict, regulatory sense of the phrase. This is at odds with the plain words of Section 1101-A(2) of PURTA.
For these reasons, I respectfully dissent.
Judge LEADBETTER joins.
NOTES
[1] This Court functions essentially as a trial court in Board of Finance and Revenue appeals. Pa. R.A.P. 1571. Pursuant to Pa. R.A.P. 1532(b): "At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear." An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute. Sanders v. Pennsylvania Board of Probation and Parole, 651 A.2d 663 (Pa.Cmwlth.1994).
[2] Petitioners also refer to Section 1922(4) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(4), which states the presumption: "That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."
[1] Act of May 12, 1999, P.L. 26, as amended, 72 P.S. § 8101-A through 8109-A.
[2] Act of June 21, 1937, P.L.1969, as amended, formerly 15 P.S. §§ 12401-12438, repealed by the Act of December 19, 1990, P.L. 834. A similar act is now found in 15 Pa.C.S. §§ 7301-7359.